William A. DWYER, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–91–00203–CR.

Court of Appeals of Texas,
El Paso.

July 8, 1992.

Norbert J. Garney, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for the State.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a judgment of conviction for misapplication of fiduciary property in an amount of $200 or more but less than $10,000, in violation of Tex. Penal Code Ann. § 32.45 (Vernon 1989).[1] Upon a finding of guilty, the jury assessed punishment at six-years' confinement in the Institutional Division of the Texas Department of Criminal Justice, probated, and a fine of $10,000. In a single point of error, Appellant asserts that there was insufficient evidence to sustain the judgment of conviction. We affirm.

## I. SUMMARY OF THE EVIDENCE

Appellant, William A. Dwyer, is a certified public accountant who was employed by Pan American Communications, Inc. during the period of March and April 1990. At that time, Pan American Communications, Inc. consisted of two divisions, one of which was the Utility Payment Center, created earlier in August 1988. The business purpose of the Utility Payment Center was to receive payments from utility consumers, for a small transaction fee, and then timely forward such payments to the appropriate public utility for credit to the respective customer. Appellant was employed as a general manager of the Utility Payment Center during the period in question.

The record reveals that the State called approximately 119 witnesses in its case-in-chief. Each witness testified that in the months of March and April 1990, they made their monthly utility payment to the Utility Payment Center in varying amounts, that each received notice that the payment had not been received by the utility company and that the act occurred in El Paso County, Texas.

Appellant, testifying in his defense, testified that in December 1989 and January 1990, cash shortages were detected which were attributed to a particular cashier. The cashier was terminated from her employment in January of 1990. Appellant further testified that all previous shortages were paid or covered. However, payment of the shortages depleted the funds needed to pay bills during March and April 1990. In fact, Appellant was "running a balancing act on trying to get bills paid...." Appellant stated that although he was experiencing severe cash flow problems prior to March 1990, he never stopped taking money from customers during March and April 1990, the period covered in the indictment. Finally, Appellant testified that in the months in question, while knowing there were insufficient funds on account to pay the above expenses and the utility bills which he had been entrusted to pay, he paid out salaries totaling approximately $5,200; rent in the amount of $700, a telephone bill of between $100 to $150 and bank charges of approximately $400.

In rebuttal, the State called former employees of the Utility Payment Center. The former employees testified that utility payments were taken from customers during the period of March and April 1990, but were not being remitted to the utility companies.

The indictment in the instant case alleged in pertinent part that Appellant misapplied money, as a fiduciary, but not as a commercial bailee, in a manner that involved substantial risk of loss to the respective complainants. On review, Appellant asserts that the evidence is insufficient to support

---

1. Tex. Penal Code Ann. § 32.45(b) (Vernon 1989) provides that "[a] person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held."

a jury verdict beyond a reasonable doubt that he knowingly, intentionally or recklessly caused a "substantial risk of loss" to the owners of the money.

## III. DISCUSSION

### A. *Standard of Review*

■ In reviewing the sufficiency of the evidence to support a criminal conviction, we are constrained to view all the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State,* 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). Instead, our role as an appellate court is only "to determine if any rational trier of fact could have, based on the evidence admitted at trial, found the essential elements of the offense beyond a reasonable doubt." *Fernandez v. State,* 805 S.W.2d 451, 456 (Tex.Crim.App.1991).

### B. *Substantial Risk of Loss*

■ The term "substantial risk of loss" means that there must be a real possibility of loss, that the risk of loss is a positive possibility and is more likely than not. *Casillas v. State,* 733 S.W.2d 158 (Tex.Crim.App.1986). In light of the above, the question then presented in the instant case is whether Appellant, in the manner in which he held funds for customers during the months of March and April 1990, presented a real and positive possibility of loss of those funds. *See Bynum v. State,* 711 S.W.2d 321 (Tex.App.—Amarillo 1986), *aff'd,* 767 S.W.2d 769 (1989).

We have carefully reviewed the record and find that the jury, as rational triers of fact, could have found that Appellant created a real and positive possibility of loss of the funds. Indeed Appellant knew of his severe cash shortages, yet he continued to accept utility payments during March

and April 1990 and applied such payments to satisfy other financial obligations.

As noted earlier, Appellant himself testified that in December 1989 and January 1990, cash shortages were detected. In order to cover such shortages, Appellant testified that he used funds needed to pay other bills. Further, Appellant by his own admission, stated that although he was experiencing severe cash flow problems prior to March 1990, he never stopped taking money from his customers during the period covered in the indictment. The record establishes Appellant applied receipts received in March and April 1990 to overhead expenses, rather than to the consumer's utility account. Furthermore, evidence established by former employees of Appellant's company reflects that utility payments taken from customers during the period of March and April 1990 were not remitted to the utility companies.

We find that the State has satisfied its burden of proving beyond a reasonable doubt that Appellant misapplied property he held in a manner that involved substantial risk of loss to the owner of the property. Accordingly, Appellant's sole point of error is overruled.

Having overruled Appellant's sole point of error, the judgment of the trial court is affirmed.