Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



STANLEY ROBERT RICHARDS, JR.,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00214-CR

Appeal from the

230th District Court

of Harris County, Texas

(TC# 986132)




O P I N I O N

           This is an appeal from a jury conviction for the offense of possession of anhydrous
ammonia with intent to manufacture a controlled substance. The court assessed punishment
at ten years’ imprisonment in the Institutional Division of the Texas Department of Criminal
Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           Robert DiMambro testified that he worked in the narcotics division of the City of
Houston Police Department. He was assigned to the Department of Public Safety
methamphetamine investigational group in Houston, Texas. This unit is made up of
members of the Texas Department of Public Safety, the Houston Police Department, the
Federal Drug Enforcement Administration, and the Harris County Sheriff’s Department. 
Officer DiMambro related that he had taken a forty-hour course from the Drug Enforcement
Administration regarding illicit drug laboratories, and he was a training instructor for site
safety. He had twenty-four years of police experience in dealing with methamphetamine. 
He had worked for the investigatory unit for three years, and he had testified as an expert in
courts in Harris County.
           Officer DiMambro testified that surveillance was conducted on a residence at 2101
Huntington Drive in Pasadena, Texas for several days beginning on December 29, 2003. On
January 7, 2004, the officer along with members of his investigatory unit executed a search
and arrest warrant on the residence. The warrant named Appellant and his wife. The prior
surveillance had indicated that Appellant and his wife were the sole occupants of the house. 
The warrant was executed at 9:50 a.m., and the officers found Appellant and his wife in bed
in a rear northeast bedroom.
           As a result of the search, all the necessary chemical ingredients and lab components
of an illicit methamphetamine laboratory with the exception of lithium metal commonly
extracted from batteries, were found in the residence. The officers found two boxes of
antihistamine tablets, containing ephedrine or pseudophedrine, and an old cell phone in a
drawer in the kitchen. They also found ten empty boxes of antihistamine tablets on the floor. 
A syringe that could be used to inject methamphetamine was found in the kitchen trash can. 
The officers also found bottles of Heet solvent, camp fuel, Red Devil Lye, and a bottle of
muriatic acid in the kitchen in plain view. There was testimony that all these items are used
in the manufacture of methamphetamine.
           In the front part of the house a bedroom had been turned into an office, and the
officers recovered a coffee filter with powder in it in plain view next to a ceramic boot. The
powder tested positive for methamphetamine. Four jars were found in the drawer of a
cabinet which contained by-products of methamphetamine. Also, a gallon can of acetone,
charcoal lighter fluid, and a bottle of hydrogen chloride gas with a tube out of the top were
found in the office. The testimony indicated that all of these items are used in the
manufacture of methamphetamine. The officers found a black bag containing anhydrous
ammonia in a freon recovery tank that was not designed or manufactured to store anhydrous
ammonia. Anhydrous ammonia is used in the manufacture of methamphetamine. This item
was found in a closet in the office.
           The officers also recovered two syringes which could be used to inject
methamphetamine, a Pepsi bottle containing tincture of iodine, a bottle of tablets of
ephedrine hydrochloride, a laboratory grade flat bottom glass with white powder in the
bottom, and receipts from Wal-Mart and Target stores showing purchases of some of the
above-mentioned items and a total of nine boxes of ephedrine. These receipts were found
in a truck located near the garage of the house. During the surveillance, Appellant had been
seen standing next to the truck.
           During the course of the search of the residence, Officer DiMambro performed what
he characterized as a Drager coulometric tube test on the contents of the freon tank. The test
proved positive for anhydrous ammonia. The officers found male and female articles of
clothing in the bedroom where Appellant and his wife were found, and the officers observed
male and female articles in the bathroom.
II. DISCUSSION
           In Appellant’s sole issue on appeal, he contends that the evidence is legally
insufficient to support the conviction in that the State failed to prove that Appellant had care,
custody, control or management over the freon recovery tank which contained anhydrous
ammonia. In reviewing the legal sufficiency of the evidence, we are constrained to view the
evidence in the light most favorable to the judgment to determine whether any rational trier
of fact could find the essential elements of the offense, as alleged in the application
paragraph of the charge to the jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim.
App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More
particularly, sufficiency of the evidence should be measured by the elements of the offense
as defined by the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d
234, 239-40 (Tex. Crim. App. 1997).



           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State ,901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           A person commits the offense of possession of a controlled substance if he knowingly
or intentionally possesses it. Tex. Health & Safety Code Ann. § 481.115(a) (Vernon
2003). The State must prove the accused exercised actual care, custody, control, and
management over the contraband and that he knew the substance he possessed was
contraband. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). These elements
may be established by circumstantial evidence. McGoldrick v. State, 682 S.W.2d 573, 578
(Tex. Crim. App. 1985). When the accused is not in exclusive possession or control of the
place where the contraband is found, the State must prove independent facts and
circumstances affirmatively linking him to the contraband--the evidence must establish the
accused’s connection with the contraband was more than just fortuitous. Brown, 911 S.W.2d
at 747. An affirmative link generates a reasonable inference that the accused knew of the
contraband’s existence and exercised control over it. Id.
           Affirmative links include but are not limited to: (1) the defendant’s presence when
the search warrant was executed; (2) whether the contraband was in plain view; (3) the
defendant’s proximity to and the accessibility of the contraband; (4) whether the defendant
was under the influence of the contraband when arrested; (5) whether the defendant
possessed other contraband when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of the contraband; (10)
whether other contraband or drug paraphernalia was present; (11) whether the defendant
owned or had the right to possess the place where the contraband was found; and (12)
whether the place the contraband was found was enclosed. Green v. State, 892 S.W.2d 220,
222 (Tex. App.--Texarkana 1995, pet. ref’d); see also Trejo v. State, 766 S.W.2d 381, 384
(Tex. App.--Austin 1989, no pet.). Additionally, it is the logical force of the factors
individually or combined that determines whether the State’s evidence links the accused to
the contraband. Trejo, 766 S.W.2d at 385.
           In the present case, the evidence indicated that Appellant and his wife lived in the
residence. There was product and paraphernalia indicative of the manufacture of
methamphetamine on surfaces and in drawers throughout the house. While the freon
recovery tank containing anhydrous ammonia was covered and in a closet, the testimony
indicated that it was used for the manufacture of methamphetamine as were the other items
in the house; many of which were located in plain view. We find that the evidence is legally
sufficient to support the conviction. Appellant’s sole issue is overruled.
           Having overruled Appellant’s sole issue on review, we affirm the judgment of the trial
court.
                                                                  RICHARD BARAJAS, Chief Justice

October 6, 2005

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)