Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



CARLOS VALDEZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00104-CR

Appeal from the

243rd District Court

of El Paso County, Texas

(TC# 20020D04190)




O P I N I O N

           This is an appeal from a jury conviction for the offenses of two counts of robbery-habitualized by the allegation of prior felony convictions. The jury assessed punishment on
each count at thirty years’ imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           At the guilt-innocence stage of trial, the State utilized the testimony of Luis Carreno,
a loss-prevention officer with the J.C. Penney Store in Cielo Vista Mall in El Paso County
Texas. At about 1:51 p.m., he was watching the store’s security cameras and he saw
Appellant and another individual, who was identified later in the trial as “Spooky,” placing
boxes of clothing irons from the shelves into Dillard’s shopping bags. Carreno informed his
supervisor, John Solis, about the activity and Solis went to the floor of the store. Carreno
watched Appellant and his companion on the monitors while another loss prevention officer,
Michael Hernandez, joined in the surveillance. As Appellant and his companion approached
the store exit, Carreno set the cameras on record and he left the security office to assist Solis
and Hernandez.
           Upon his arrival at the store exit, Carreno saw the other loss prevention officers and
Appellant and his companion engaging in an altercation outside the store. The companion
was throwing punches and kicking at the loss prevention officers as they were trying to
apprehend the two shoplifters. Carreno saw that Appellant was about to strike Solis, and he
identified himself as a loss prevention officer and ordered Appellant to stop. Upon seeing
Carreno, Appellant ran across the mall parking lot toward an off-ramp. Appellant was still
clutching one of the Dillard’s bags containing the stolen irons.
           Carreno chased Appellant and caught up with him at the top of the off-ramp. He
grabbed Appellant from behind. They both fell to the pavement with Appellant landing on
top of Carreno. Appellant cursed and threatened Carreno, and he stated that he was a
member of the Barrio Azteca gang. Appellant rose from the pavement, and he stomped on
Carreno’s testicles--causing Carreno considerable pain. Appellant ran off down the off-ramp
with the Dillard’s bag still in his possession. Carreno got up and chased after Appellant. 
Carreno caught up with Appellant and tackled him. Carreno fell on top of Appellant and
tried to handcuff him. Appellant was able to get off of the ground and he started hitting
Carreno.
           Michael Hernandez arrived to assist Carreno, and they both struggled to handcuff
Appellant. He resisted by biting, swinging his elbows, and kicking at them. Appellant bit
Hernandez’s finger causing substantial pain. Appellant continued to threaten Carreno and
Hernandez and he again stated that he was a member of the Azteca gang. Both loss
prevention officers denied kicking Appellant in the face or head during the confrontation, but
they acknowledged that Appellant may have sustained injuries. They both stated that
Appellant seemed to exhibit great strength during the struggle.
           While Carreno and Hernandez were trying to handcuff Appellant, four Border Patrol
agents happened to see the struggle, and they assisted Carreno and Hernandez. 
One of the agents testified that Appellant was violently resisting the arrest by swinging and
kicking. Eventually, the six were able to subdue Appellant and handcuff him. After the
Border Patrol agents left, Solis arrived and the three escorted Appellant back to the J.C.
Penney security office.
           When the police arrived at the store, Appellant told them he was hurt and needed to
go to the hospital. Appellant was transported to the hospital where he was treated for cuts
and bruises. He was then released. He also lost some teeth during the struggle. Appellant
was booked into the county jail.
           Appellant testified on his own behalf, and he admitted that he and “Spooky” tried to
steal the irons in order to get some money. When they got outside the store, three individuals
attacked them and began beating them up. Appellant testified that he could not calm the
individuals so he ran toward the freeway. He still had the Dillard’s bag in his hand. When
he reached the off-ramp, he dropped the bag and continued on down the off-ramp. Carreno
caught up with him at the off-ramp and tackled him. Appellant got away from Carreno and
he started running again. Appellant soon got tired, and when he saw Carreno approach, he
gave up his flight and turned himself over to Carreno. Appellant then saw the Border Patrol
agents approach, and as he was looking at them, Carreno “sucker punched” him and then
tackled him. Appellant tried to get Carreno off of him but he could not, and his stomach was
burning on the hot pavement. Hernandez arrived and kicked Appellant in the head five times
as Carreno held him down and choked him. Appellant denied that he ever threatened, hit,
kicked, or in any way assaulted any of the loss prevention officers.
           Appellant testified that he was then dragged back to the security office. He was
beaten, and when he asked for water, it was thrown in his face. Appellant stated that
Hernandez punched him the stomach, and he vomited on the floor. He was then told to mop
the floor with his pants. The police then arrived. During cross-examination, Appellant
admitted being a member of the Azteca gang, but he denied ever threatening the loss
prevention officers with gang retaliation. He admitted to trying to steal the clothes irons, a
pair of sunglasses, and a wallet from the J.C. Penney store. Appellant stated that he never
heard the loss prevention officers identify themselves.
           The State called Dr. John Fletcher Haynes, Jr. as a rebuttal witness. He testified that
he had examined Appellant’s medical records and the record showed that Appellant had
traces of morphine, cocaine, and marijuana in his system around the time of the incident. Dr.
Haynes stated that the trace of morphine was consistent with heroin use. He testified that the
amount of cocaine and morphine in his system at the hospital was high; therefore, the levels
of cocaine and morphine in his system at the time of the incident would have been
“enormously high.” According to Dr. Haynes, these levels of cocaine and morphine in
someone’s system could cause that person’s perception of events to be affected and would
alter the person’s perception and judgment.
II. DISCUSSION
           In Issue No. One, Appellant asserts that the evidence was legally insufficient to
support the conviction. In reviewing the legal sufficiency of the evidence, we are constrained
to view the evidence in the light most favorable to the judgment to determine whether any
rational trier of fact could find the essential elements of the offense, as alleged in the
application paragraph of the charge to the jury, beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d
234, 239 (Tex. Crim. App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App.
1987). More particularly, sufficiency of the evidence should be measured by the elements
of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           The application paragraphs in the court’s charge to the jury at the guilt-innocence
stage of trial provided:
AS TO COUNT 1
 
Now, if you believe from the evidence beyond a reasonable doubt that
the defendant, CARLOS VALDEZ, individually or as a party, did then and
there in El Paso County, Texas, on or about July 31, 2002 while in the course
of committing theft and with intent to obtain or maintain control of property,
intentionally or knowingly or recklessly cause bodily injury to LUIS
CARRENO by kicking LUIS CARRENO about the body with the Defendant’s
foot, you will find the defendant guilty of robbery . . . .

. . .

AS TO COUNT 2
 
Now, if you believe from the evidence beyond a reasonable doubt that
the defendant, CARLOS VALDEZ, individually or as a party, did then and
there in El Paso County, Texas, on or about July 31, 2002 while in the course
of committing theft and with intent to obtain or maintain control of property,
intentionally or knowingly or recklessly cause bodily injury to MICHAEL
HERNANDEZ by biting MICHAEL HERNANDEZ about the finger with the
Defendant’s teeth, you will find the defendant guilty of robbery under Count
2 of the indictment.

                      The jury was also instructed that:

AS TO THE PROTECTION OF PROPERTY
 
The shopkeeper’s privilege does not justify an assault. An assault is
any intentional, knowing, or reckless causing of bodily injury to another or
intentional or knowing causing of physical contact with another when the
person knows or should reasonably believe that the other will regard the
contact as offensive or provocative.
The Code of Criminal Procedure provides any person has a right to
prevent the consequences of theft by seizing any personal property that has
been stolen and bringing it, with the person suspected of committing the theft,
if that person can be taken, before a magistrate of examination, or delivering
the property and the person suspected of committing the theft to a peace officer
for that purpose. To justify a seizure under this article, there must be
reasonable ground to believe the property is stolen, and the seizure must be
openly made and the proceedings had without delay.
The Penal Code provides that a person unlawfully dispossessed of
tangible, movable property by another is justified in using force against the
other when and to the degree the actor reasonably believes the force is
immediately necessary to recover the property if the actor uses the force
immediately or in fresh pursuit after the dispossession and the actor reasonably
believes the other had no claim of right when he dispossessed the actor. 
A person is justified in using force against another to protect movable
property of a third person if, under the circumstances as he reasonably believes
them to be, the actor would be justified under the paragraph above in using
force to protect his own property and the actor reasonably believes the
unlawful interference constitutes attempted or consummated theft of movable
property or the actor reasonably believes that the third person has requested his
protection of the property or he has a legal duty to protect the third person’s
property.

           Appellant contends that the evidence was legally insufficient because: (1) there was
no evidence to support his guilt as a party in that there was no indication that he encouraged,
aided, or directed his companion to commit a robbery; (2) there was no evidence that
Appellant stole any property; (3) the loss prevention officer’s use of force in detaining
Appellant was not justified under the Shopkeeper’s Privilege; and (4) the struggle in the mall
parking lot was too remote from any theft inside the store; therefore, there was no nexus
between the assault and the theft in order to constitute robbery.
           A person commits robbery if, in the course of committing theft and with intent to
obtain or maintain control of property, he intentionally, knowingly, or recklessly causes
bodily injury to another or he intentionally or knowingly threatens or places another in fear
of bodily injury or death. Tex. Penal Code Ann. § 29.02(a) (Vernon 2003). The actual
commission of the offense of theft is not a prerequisite to the commission of the offense of
robbery; the gravamen of robbery is the assaultive conduct and not the theft. Purser v. State,
902 S.W.2d 641, 647 (Tex. App.--El Paso 1995, pet. ref’d), cert denied, 525 U.S. 838, 119
S.Ct. 98, 142 L.Ed.2d 78 (1998). The phrase “in the course of committing theft” within the
robbery statute, means conduct which occurs in an attempt to commit, during commission,
or in immediate flight after the attempt or commission of theft. Id. Thus, the State is not
required to conclusively show by independent evidence that a completed theft actually
occurred in order to establish the corpus delicti of robbery. Id. It is required only to adduce
evidence which tends to show an assault occurring while the perpetrator is in the course of
committing or attempting to commit theft. Id.
           Regarding the assaultive conduct, violence accompanying an attempt to escape
immediately following a theft or attempted theft may elevate the conduct to robbery. See
White v. State, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984).
           In the present case, viewing the evidence in the light most favorable to the verdict, the
record indicates that Appellant and his companion left the premises of the J.C. Penney store
with each carrying a bag of stolen merchandise. When confronted outside the store,
Appellant ran with the stolen items still in his possession. While being chased, a physical
altercation occurred and Appellant assaulted two employees of the store. This evidence
supports Appellant’s conviction for robbery. See id. at 41-42; Chamberlin v. State, 704
S.W.2d 801, 802-03 (Tex. App.--Dallas 1985, no pet.).
           With regard to Appellant’s contention that there was insufficient evidence to convict
him as a party, the application paragraph of the charge to the jury allowed for a conviction
as a sole actor or as a party. Clearly, there was sufficient evidence to support Appellant’s
conviction as the primary actor; therefore, it was not necessary to demonstrate parties
liability.
           Appellant contends that there was no evidence that Appellant actually stole the
property from the store. However, as discussed above, it was not necessary to prove a
completed theft. In this instance, the evidence sufficiently showed that, at the least,
Appellant attempted to steal the irons from the store, and committed a violent act while trying
to escape.
           Next, Appellant maintains that the loss prevention officer’s use of force in detaining
him went beyond the level of assault allowed by the Shopkeeper’s Privilege. This privilege
provides that:
A person who reasonably believes that another has stolen or is
attempting to steal property is privileged to detain that person in a reasonable
manner and for a reasonable time to investigate ownership of the property. 

           Tex. Civ. Prac. & Rem. Code Ann. § 124.001 (Vernon 2005).

           This section of the Civil Practice and Remedies Code is applicable to a shopkeeper’s
civil liability regarding store thefts. See Dillard Dept. Stores, Inc. v. Silva, 148 S.W.3d 370,
372 (Tex. 2004). We have not found any case that applies this section to criminal
proceedings. Rather, Tex. Code Crim. Proc. Ann. art. 18.16 (Vernon 2005); Tex. Penal
Code Ann. § 9.41(a) (Vernon 2003); and Tex. Penal Code Ann. § 9.43 (Vernon 2003) are
the applicable statutory provisions in a criminal case of this nature. The jury was instructed
regarding these provisions, respectively, in the above-quoted second, third, and fourth
paragraphs of the court’s charge to the jury regarding the protection of property. After
property has been taken, the use of force is justified against the perpetrator when and to the
degree the actor responding to the theft reasonably believes the force is immediately
necessary to recover the property if the actor uses the force immediately or in fresh pursuit
after the dispossession and the actor reasonably believes that the other had no right when he
dispossessed the actor. See Tex. Penal Code Ann. § 9.41(a) (Vernon 2003). Section 9.43
provides similar protections to a third person acting to protect another’s property. See Tex.
Penal Code Ann. § 9.43 (Vernon 2003).
           In the present case, Appellant was in immediate flight from his theft of merchandise
in the store when an attempt was made to detain him. According to the testimony of several
witnesses, he violently resisted that detention necessitating the application of force to detain
him. Viewing the evidence in the light most favorable to the verdict, we find that the use of
force was appropriate, and it was administered while Appellant was in immediate flight from
the theft of merchandise from the store.
           Lastly, Appellant argues that the several confrontations in the parking lot were too
remote in time from the theft; therefore, the State failed to establish the nexus between the
theft and the assault. As stated, a person commits robbery if he engages in acts of violence
while “in the course of committing theft.” This includes the immediate flight from the theft
or attempted theft. See Tex. Penal Code Ann. § 29.02(a)(1) (Vernon 2003); Tex. Penal
Code Ann. § 29.01(1) (Vernon 2003).
           Clearly, there is a series of continuous events from the time the theft was discovered
until Appellant was eventually apprehended. The evidence demonstrated that the assaults
against Carreno and Hernandez were committed during an escape which immediately
followed the theft. The evidence is legally sufficient to support the conviction. Issue No.
One is overruled.
           In Issue No. Two, Appellant asserts that the court erred in admitting the toxicology
evidence in that such evidence constituted an inadmissible extraneous offense. When
Appellant was taken to the hospital, several tests were performed during the almost seven-
hour stay. The medical records from the hospital were admitted into evidence. As stated,
Dr. John Fletcher Haynes, Jr. testified as a rebuttal witness after Appellant testified. At the
close of the voir dire examination of Dr. Haynes, Appellant objected that: (1) the doctor
could not determine the level of Valdez’s intoxication at the time of the incident; (2) he could
not specifically state that the intoxication impaired Appellant’s ability to recall the operative
events; and (3) his testimony about the manner in which an intoxicated person would react
to a perceived threat was not relevant. These objections were overruled and the doctor was
allowed to testify.
           A contention on appeal must comport with the same legal theory presented to the trial
court by a timely, specific objection. A trial objection which states one objection may not
be used to support a different theory on appeal. See Davila v. State, 930 S.W.2d 641, 650
(Tex. App.--El Paso 1996, pet. ref’d); Maldonado v. State, 902 S.W.2d 708, 711 (Tex. App.--
El Paso 1995, no pet.). While Appellant states that the doctor could not determine the level
of Appellant’s intoxication at the time of the incident in his brief, it is stated in passing with
no cited authority. It is clear that Appellant’s only contention on appeal is that the court erred
in admitting an inadmissible extraneous offense. As this contention was not raised at the trial
court, Appellant has waived his issue on appeal. Issue No. Two is overruled.
           In Issue No. Three, Appellant asserts that the court’s punishment charge was
erroneous in that it allowed an enhanced punishment on less than a unanimous jury verdict. 
The court’s punishment charge read, in pertinent part:
Now, if you find from the evidence beyond a reasonable doubt that
prior to the commission of the offenses of ROBBERY, of which you have
found the defendant guilty, he was two separate times duly and legally
convicted of at least one felony with at least one such conviction coming from
at least two paragraphs below:
 
(a) either one conviction of Burglary of Vehicle Habitualized, Burglary of
Vehicle Habitualized or Burglary of Vehicle Habitualized in the 65th District
Court of El Paso, County, Texas in cause numbers 6127965, 60727, or 60726
on the 5th day of August, 1991,
 
(b) either one conviction of Burglary of a Vehicle Enhanced or Burglary of a
Vehicle in the 327th Judicial District Court of El Paso County, Texas in Cause
Numbers 54622 or 55373 on the 12th day of June, 1989,
 
(c) either one conviction of Burglary or Burglary of a Vehicle, in the 243rd
Judicial District Court of El Paso County, Texas in Cause Number 52173243
or 50847243, on the 7th day of March, 1988.

           The court went on to instruct the jury with regard to the proper sequencing, and that
if that sequencing existed, they should find the habitualizaton allegation “true” and assess
Appellant’s punishment as a habitual offender. The court further instructed that, “in order
to return a verdict, each juror must agree thereto.” Appellant did not object to the
punishment charge on the ground that it allowed for a less than unanimous verdict which is
his contention on appeal.
           The Code of Criminal Procedure requires that there be jury unanimity with regard to
punishment. See Sanchez v. State, 23 S.W.3d 30, 33 (Tex. Crim. App. 2000); Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(c) (Vernon Supp. 2005). In Sanchez, the Court held that
there must be unanimity with regard to the sudden passion issue at the punishment stage of
trial. Sanchez, 23 S.W.3d at 32-34. However, to this Court it remains unclear whether or not
such unanimity is required as to the preliminary factual issues such as findings with regard
to prior felony convictions and their sequencing as opposed to unanimity regarding the jury’s
ultimate decision regarding the amount of punishment.
           While we can find no cases discussing this issue with regard to punishment issues, it
is instructive to look at similar issues at the guilt-innocence stage of trial. The Court of
Criminal Appeals has held that in the context of allegations of alternate manners or means
of committing a single offense, “there is no general requirement that the jury reach agreement
on the preliminary factual issues which underlie the verdict.” Kitchens v. State, 823 S.W.2d
256, 258 (Tex. Crim. App. 1991), cert denied, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d
230 (1992). The State maintains that as the charge required the jury to unanimously find
Appellant’s status as a habitual offender and the number of years to be assessed, the charge
does not violate the holding in Sanchez. We agree. The fact that the charge did not require
unanimity regarding the preliminary facts leading to the finding of habitual offender status,
does not require a finding that the charge was erroneous. Issue No. Three is overruled.
           In Issue No. Four, Appellant maintains that the court erred by submitting an enhanced
punishment charge. Appellant objected at trial and asserts now on appeal that while the prior
convictions for burglary of vehicle underlying the State’s habitualization allegations were
felonies at the time of conviction, they are now misdemeanors; accordingly, they are invalid
for the purposes of enhancement and habitualization.
           At the time Appellant committed and was convicted of the burglary of vehicle
offenses, they were felonies. However, the penal statues were amended in 1993 and burglary
of vehicle was downgraded to a misdemeanor. This amendment became effective September
1, 1994, and all offenses committed prior to that date were governed by the law in effect at
the time of the commission of the offense. See Castaneda v. State, 135 S.W.3d 719, 724
(Tex. App.--Dallas 2003, no pet.).
           Appellant cites to section 311.031(b) of the Government Code in support of his
contention. This section provides:
(b) If the penalty, forfeiture, or punishment for any offense is reduced
by a reenactment, revision, or amendment of a statute, the penalty, forfeiture,
or punishment, if not already imposed, shall be imposed according to the
statute as amended.

           Tex. Gov’t Code Ann. § 311.031(b) (Vernon 2005).
           However, the 1993 amendments of the burglary of vehicle statute provided that
offenses committed prior to September 1, 1994 were governed by the law in effect at the time
of the commission of the offense and such language supercedes the above-quoted language
in the Government Code. See Fiori v. State, 918 S.W.2d 532, 532-33 (Tex. App.--Dallas
1995, no pet.); Delgado v. State, 908 S.W.2d 317, 318-19 (Tex. App.--El Paso 1995, pet.
ref’d). Accordingly, the amendment did not change the classification of Appellant’s prior
convictions from third-degree felonies to misdemeanors thereby allowing those convictions
to be available for the use in enhancing or habitualizing Appellant’s punishment in this case. 
Castaneda, 135 S.W.3d at 724. Issue No. Four is overruled.
           In Issue No. Five, Appellant argues that the court erred by allowing the State to amend
the indictment. On July 9, 2003, the State filed a motion for leave to amend the indictment
to reflect the true name of the complainant in Count I of the indictment. The change was to
reflect the name of Luis Carreno instead of Luis Carreon. At a hearing held on July 14, 2003,
the defense counsel at the time stated that he had no objection to the change and it is reflected
on the indictment that the change was physically made to the indictment. Subsequently, on
August 7, 2003, Appellant filed a pro se motion which, among other things, complained of
the name change in the indictment. Later, Appellant’s trial attorneys objected to the change
and they urged a motion to quash the indictment the day prior to the commencement of trial. 
           The indictment was amended about eight months prior to the commencement of trial. 
Any matter of form or substance in the indictment may be amended, subject to two
limitations: (1) the accused is entitled, upon request, to 10 days to prepare a response to the
amended indictment; and (2) the indictment may not be amended over the defendant’s
objection if the amended indictment charges an additional or different offense or if the
defendant’s substantial rights are prejudiced. Tex. Code Crim. Proc. Ann. art. 28.10(a) &
(c) (Vernon 1989). It is proper to amend an indictment to correct the name of a victim or
complainant. See Flowers v. State, 815 S.W.2d 724, 728-29 (Tex. Crim. App. 1991). Such
a change does not implicate charging a new or additional offense. Id. However, regarding
the further inquiry if the change prejudiced the defendant’s substantial rights, the primary
inquiry is whether the amendment adversely affected the accused’s ability to prepare a
defense. Id. If the amendment is made on the same incident upon which the original
indictment was predicated, this would not constitute a change that affected the ability to
prepare a defense. Id. This change involved the same incident.
           On appeal, Appellant contends that he was prejudiced by the amendment because had
the indictment not been amended, the State would have been limited to offering evidence
only as to Count II of the indictment. However, this evidence would have come into the case
as same transaction contextual evidence irrespective of the quashing of Count I of the
indictment. See Rogers v. State, 853 S.W.2d 29, 33-34 (Tex. Crim. App. 1993). 
Accordingly, Appellant has failed to demonstrate that the court erred in allowing the
amendment to the indictment. Issue No. Five is overruled.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice

March 16, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)