COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JEREMIAH RAMIREZ, §

§ No. 08-07-00207-CR

Appellant, §

§ Appeal from the

v. §

§ 235th District Court

THE STATE OF TEXAS, §

§ of Cooke County, Texas

Appellee. §

§ (TC# 06-031)

§

**O P I N I O N**

This is an appeal from a jury conviction for violation of a protective order. The court assessed punishment at two years' confinement. We affirm the judgment of the trial court.

**I.  SUMMARY OF THE EVIDENCE**

On September 22, 2003, Rhonda Ladelle Fry filed an application with the County Court of Archer County for a protective order against Appellant, Jeremiah David Ramirez, Sr. On October 6, 2003, Appellant was served with notice of an application for a protective order, bearing Cause No. 1389, which contained a notice of a hearing set for 3 p.m. on October 14, 2003. On October 14, a hearing was held and a protective order issued against Appellant, although he failed to attend the hearing. The protective order bears Cause No. 1371 and says the hearing was held on October 15, notwithstanding the fact that it had a date stamp of October 14, 2003, at 3:10 p.m. The protective order forbade Appellant from, among other things, committing acts of family violence against Fry.

Investigator Chad Mathes of the Gainesville, Texas, Police Department, testified that, on January 16, 2005, he received a dispatch call in reference to an assault that occurred at 1026 East

Garnet St. in Gainesville. When Investigator Mathes arrived, he found Fry very upset. He stated that Fry told him her ex-common law husband, not an occupant at the residence, entered the house through the window and assaulted her. He also stated that Fry told him she had a protective order against Appellant. Investigator Mathes said that Fry had redness to her neck and hand, but there was not any bruising or swelling. Investigator Mathes further testified that Fry told him that Appellant slammed her hand in a door when she tried to run out of the house and put his hands around her neck, as if to choke her.

Thomas Briers, who rented an upstairs apartment in Fry's home, testified that, on January 16, 2005, he heard banging and screaming coming from downstairs. Briers related that he heard Fry calling for help. When he went downstairs, he saw a man at the end of the stairs, a man outside, and Appellant on top of Fry, who was screaming. Briers testified he saw Appellant holding Fry down on the floor with both of his hands on her neck, and Appellant appeared intoxicated. Briers yelled at him to leave and let go of Fry. Appellant immediately did so.

Briers asserted the photographs entered into evidence by the State did not correctly depict Fry's injuries, because her injuries were actually much more severe. Briers also testified that he knew Fry had a protective order against Appellant.

Without the jury present, Appellant objected to the jury charge, because the State failed to prove that Appellant had received notice of the protective order and its contents. The judge overruled the objection, and the case was submitted to the jury. The jury returned a verdict of guilty for violation of the protective order, as alleged in the indictment. Appellant originally elected to have the jury determine the punishment, but he later changed his mind and entered into a plea bargain with the State with regard to punishment. Appellant's punishment was assessed at two years' incarceration.

## II. DISCUSSION

In Issues Nos. One and Two, Appellant argues that the evidence is legally and factually insufficient to support the conviction. Specifically, he maintains that he did not have notice of the protective order he was alleged to have violated when he assaulted his estranged wife, because the differing cause numbers do not show that the notice of the application for the protective order and the notice of hearing relate to the protective order that was issued.[1]

In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). More particularly, sufficiency of the evidence should be measured by the elements of the offense, as defined by the hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997).

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, and thus, the

---

[1] The application paragraph in the court's charge to the jury read:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Jeremiah Ramirez, on or about the 16th day of January, 2005, in the County of Cooke, and State of Texas, as alleged in the indictment, did then and there knowingly or intentionally, in violation of an order of the County Court of Archer County, Texas dated the 15th day of October, 2003 which was issued at a hearing held after defendant received service of the application for the order and notice of the hearing, commit family violence by an act against Rhonda Fry, a member of his family or household, that was intended to result in physical harm, bodily injury or assault or that was a threat that reasonably placed Rhonda Fry in fear of imminent physical harm, bodily injury or assault and which act constituted an assault, you will find the defendant guilty of the offense of violation of protective order and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof you will acquit the defendant and say by your verdict "Not Guilty."

fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650-52 (Tex. App.--El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex. App.--El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex. App.--El Paso 1992, no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the trier of fact are rational, by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843 (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State*, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref'd).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is factually insufficient, if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Therefore, the question we must consider in conducting a factual-sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

In performing this review, we are to give due deference to the fact finder's determinations. *See id.* at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the

witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Consequently, we may find the evidence factually insufficient only where necessary to prevent a manifest injustice from occurring. *See Johnson*, 23 S.W.3d at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

As we have noted, Appellant received a notice of an application for a protective order and notice of a hearing. Both of those documents bore Cause No. 1389. The County Court issued a protective order against Appellant, bearing Cause No. 1371 and an incorrect date. Appellant argues that the State did not prove that he had knowledge of the protective order bearing Cause No. 1371, because he did not receive a notice of an application or notice of a hearing bearing that cause number.

Regarding the offense of violating a protective order, a person commits an offense if, in violation of an order issued under various sections of the Family Code or Code of Criminal Procedure, the person knowingly or intentionally commits family violence. *See* Tex. Penal Code Ann. § 25.07(a)(1). With regard to this type of offense, when a protective order has been issued under the Family Code provisions, the respondent may be guilty of violating that order, even though he does not know it has been issued or its provisions, provided he has been given a copy of the application for the protective order and notice of the hearing to determine whether the protective order will be issued. *See Harvey v. State*, 78 S.W.3d 368, 372-73 (Tex. Crim. App. 2002). It is irrelevant that the respondent chooses not to read the application or the notice or chooses not to attend the hearing. *Id.*

Furthermore, the Texas Penal Code does not require the State to prove the cause number in which the order was issued. *See* Tex. Penal Code Ann. § 25.07; *Lee v. State*, 983 S.W.2d 77, 78 (Tex. App.--San Antonio 1998, no pet.). The failure to prove the cause number is not a material or

fatal variance. *See Gollihar v. State*, 46 S.W.3d 243, 257 n.21 (Tex. Crim. App. 2001) (noting that, if allegation is not essential to constitute offense and might be omitted from information, variance will rarely meet materiality test).

Here, the evidence demonstrates that Appellant had notice of the application for a protective order and of the hearing. It is not contested in the record that Appellant received notice of an application for a protective order and hearing under Cause No. 1389. The notice referencing the same court as stated in the protective order stated that, if Appellant did not attend the hearing a default judgment may be entered against him and a protective order issued.[2] The argument that the subsequent protective order had a different cause number than the notice of the application and hearing is irrelevant as to whether Appellant had notice of a protective order. Since notice of an application of a protective order and a hearing were provided to Appellant, and his assault upon Fry is uncontested, we find that the evidence is legally and factually sufficient to support the conviction.

Additionally, Appellant impermissibly attempts a collateral attack on the validity of the protective order in his criminal conviction for violating it. A collateral attack occurs if it must in some fashion overrule a previous judgment. *Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005). Essentially, Appellant asks the Court to find the protective order invalid for want of notice and thereafter issue an acquittal in his criminal prosecution for violating the protective order. This is an impermissible collateral attack. Appellant did not contest that he was the Jeremiah David Ramirez referred to in the protective order. The assertion of the trial court's subject matter jurisdiction over Jeremiah David Ramirez in the protective order is presumed to be correct, despite the differing cause

---

[2] We note the State attached a "Family Violence Protective Order Nunc Pro Tunc" at the end of its brief stating the court corrected the clerical error. However, "[a]n appellate court must determine a case on the record as filed and cannot consider documents attached as exhibits or appendices to briefs or motions." *James v. State,* 997 S.W.2d 898, 901 n.5 (Tex. App.--Beaumont 1999, no pet.).

numbers. *See id.* (stating collateral attacks are impermissible, based on policy reasons for finality of judgments of courts). Appellant cannot collaterally attack the validity of the protective order for lack of notice on an appeal for his conviction for violating it. Appellant could have raised his claim of lack of notice to the County Court that issued the order or objected to the clerical error at trial so the court could have corrected it. As noted by the State, "Appellate courts must base their decisions on the record as made and brought forward, not on a record that should have been made or could have been made." *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 411 (Tex. 1998). Accordingly, Issues Nos. One and Two are overruled.

In Appellant's third, fourth, and fifth issues, he contends that the divergence in the cause numbers resulted in the denial, respectively, of his Sixth Amendment, Due Process, and Due Course of Law rights under the Federal and State Constitutions. However, Appellant fails to provide any argument on appeal explaining how these various rights were violated. As a consequence, we find that Appellant has waived his third, fourth, and fifth issues.[3]

### III. CONCLUSION

We affirm the judgment of the trial court.

KENNETH R. CARR, Justice

August 14, 2008

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)

---

[3] *See* TEX. R. APP. P. 38.1(h) (a "brief must contain a clear and concise argument for the contentions made").