COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ALFREDO BETANCOURT, | § | |
| | | No. 08-07-00255-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 210th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20060D01940) |
| | § | |

## O P I N I O N

Alfredo Betancourt was convicted of aggravated sexual assault of a child. After presentation of the State's case-in-chief, the trial court granted a directed verdict as to Count I-A of the indictment (vaginal penetration). Count II-A of the indictment charged that Appellant intentionally and knowingly caused the penetration of the anus of L.S. The State chose to abandon Count II-B of the indictment (anal contact). Count I-B charged that Appellant intentionally and knowingly caused the sexual organ of L.S., a child younger that fourteen years of age, to contact his sexual organ. He was found guilty, and the jury assessed punishment at ten years' confinement. Appellant was found not guilty of Count II-A (anal penetration).

### STATEMENT OF FACTS

L.S. was twelve years old and in the fifth grade at the time of trial. Because she had been experiencing daytime enuresis, she consulted with Dr. Akin about the problem. Dr. Akin performed a full genito-urinary exam. During the course of the exam, L.S. told Dr. Akin that her cousin (Appellant) was doing bad stuff that was not right. L.S. indicated that these incidents occurred in the Appellant's house, and that she was six or seven at the time.

L.S. testified to three incidents. In the first incident, L.S. had been in a room next to Appellant's. Appellant told her they were going to play an new game called "mom and dad." Appellant pulled her pants down to her knees or shoes, took his "thing" out of his pants, and then tried to put it in her bottom. She clarified that her bottom was where you "do number 2." Appellant was unable to penetrate the child, but he did touch his penis to her bottom. L.S. indicated that she was scared, but she did not tell anyone because she was not sure if what had happened was good or bad.

In the second incident, L.S. was sitting on the corner of the bed, wearing her top but not her pants. She was sitting in a split and facing Appellant. Appellant was on his knees. Appellant attempted to put his "thing" inside her, but she did not let him. In response to the prosecutor's question, L.S. explained that he had tried to penetrate her front private part. While no penetration occurred, Appellant did touch her with his penis. On cross-examination, L.S. clarified how she was sitting on the bed. She was leaning back, her knees were apart, and her feet were a little bit together. She also testified that Appellant touched her on her "bottom." Defense counsel tried to show that penetration or contact was impossible based on the child's testimony about her position.

The third incident also occurred in Appellant's bedroom. L.S. was in the middle of the bed, laying on her "front part." Her legs were hanging off the bed and Appellant was on his knees. This time penetration did occur. L.S. testified that it hurt and she was crying. She observed Appellant rolling a white circle on his "thing." The child drew and described Appellant's penis.

Dr. Akin also testified at trial. He described his examination of L.S. and explained that the child became very tearful, agitated, and fearful during the exam. This behavior was a red flag that caused him concern. The exam revealed that L.S. had a rather widened vaginal orifice and that the

2

hymenal edges seemed thinner than usual for a girl of her age. There was not enough evidence to indicate trauma, but enough to raise his curiosity. After a full examination, Dr. Akin spoke with both L.S. and her mother. The mother indicated that L.S. had become tearful, clingy, and anxious. Then Dr. Akin asked L.S. if anyone had ever hurt her before. The child began to weep profusely, and she admitted her cousin had put his "thingy" in her "pee pee." The child could not remember exactly when it had happened, but it had been going on for some time. There was no evidence of anal trauma and no acute sign of vaginal penetration.

During the punishment phase, Appellant took the stand to testify on his own behalf in the presence of the jury. The trial court, *sua sponte*, removed the jury from the courtroom, and outside the presence of the jury, admonished Appellant regarding his Fifth Amendment right against self-incrimination. Defense counsel then requested a recess and upon return, Appellant chose not to testify.

## SUFFICIENCY OF THE EVIDENCE

In his first issue for review, Appellant challenges both legal and factual sufficiency of the evidence. We begin with the pertinent standards of review.

### Standards of Review

In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). More particularly, sufficiency of the evidence should be measured by the elements of the offense, as defined by the hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234,

3

239-40 (Tex.Crim.App. 1997). Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex.App.–El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, so the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650-52 (Tex.App.–El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.–El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex.App.–El Paso 1992, no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843 (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.–El Paso 1995, pet. ref'd).

When conducting a factual sufficiency review, we view all of the evidence in a neutral light. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Under the first prong of *Johnson,* we cannot say that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit, had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies

4

a new trial simply because we disagree with the jury's resolution of that conflict. *Id*. Before finding that the evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In conducting our factual sufficiency review, we must also discuss the evidence which Appellant claims is the most important in allegedly undermining the finding. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). We defer to the fact finder's determination of witnesses' credibility and of the weight given to the evidence. *Cleveland v. State*, 177 S.W.3d 374, 388 (Tex.App.–Houston [1st Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1073 (2006).

**Analysis**

With regard to legal sufficiency, the record reveals the following exchange:

Direct Examination of L.S.

Q. What did [Appellant] do to you?

A. He tried to put his thing inside me.

Q. Where?

A. Right here.

Q. In your front private part?

A. Yes.

Q. Did he put it in you?

A. No.

Q. Did he touch you with it?

A. Yes.

5

Q. Did it go in you at all?

A. No.

Cross-Examination of L.S.

Q. Where did he touch you?

A. Just here.

Q. Just here?

A. Here (indicating).

Q. On your bottom?

A. Yes.

Defense counsel then attempted to show, by demonstration, that organ-to-organ contact was impossible based on the chid's testimony regarding her position on Appellant's bed:

Cross-Examination of L.S.

Q. This is how you were sitting?

A. No.

Q. Tell me, how were you sitting?

A. I was kind of leaning back.

Q. You were kind of leaning -- like this?

A. Yes.

Q. And was that the extent of it?

A. Yes.

Q. Okay. And what does he do?

A. He's pulling his pants down.

Q. Okay. And then what happened?

A. He tried to put his thing inside of me.

Q. Okay. But you're sitting down, right?

A. Right

Q. And this is how you're sitting, right?

A. Right.

Q. Are your knees together?

A. No.

Q. They're apart?

A. Yes.

Q. How far apart?

A. Like -- like that.

Q. Like this?

A. Yes, but my feet were a little bit together.

From this testimony, the jury could have found Appellant guilty of all the elements of the charged crime beyond a reasonable doubt. First, L.S. testified that Appellant touched her genitalia with his genitalia. This is direct evidence to support a finding of guilt. Testimony of a child is sufficient to support conviction for aggravated assault, and child witnesses are not expected to testify with the same clarity as adults. *Jones v. State*, 817 S.W.2d 854, 856-57 (Tex.App.–Houston [1st Dist.] 1991, no pet.); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex.Crim.App. 1990). It is the jury's sole job to weigh the evidence and credibility of the witness. *Menchaca*, 901 S.W.2d at 650-52; *Adelman*, 828 S.W.2d at 421; *Matson*, 819 S.W.2d at 843; *Leyva*, 840 S.W.2d at 759; *Bennett*, 831

7

S.W.2d at 22. Moreover, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843. The child's testimony is further supported by Dr. Akin's testimony regarding the child's outcry. Thus, the evidence is legally sufficient.

Our review of the record further reveals that the great weight and preponderance of the evidence does not contradict the jury's finding. We have two statements from the victim to support the conviction–her outcry and her trial testimony. While some contradiction does exist, we defer to the fact finder's determination of witnesses' credibility and of the weight given to the evidence. *Cleveland*, 177 S.W.3d at 388. The jury was in a better position to synthesize the direct and cross-examination testimony of the child. The jury was also in a better position to determine how much weight to give to the Appellant's demonstration. Because the jury could have reasonably concluded that Appellant was guilty of the charged offense, and their determination was not clearly wrong, unjust, or against the great weight of the evidence, the evidence is factually sufficient. We overrule Issue One.

## FIFTH AMENDMENT ADMONISHMENT

In his second issue, Appellant contends that his fundamental right to testify on his own behalf was violated when the trial court admonished him of his Fifth Amendment right against self-incrimination. Appellant intended to testify during the punishment phase. After removing the jury from the courtroom, the judge proceeded to admonish him. Among other things, the judge told Appellant that (1) the jury could not hold it against him if he did not testify; (2) the State could question him about the case and would not be limited in what it asked; (3) anything he said while on the stand could be used against him in the assessment of punishment; (4) once he began testifying, he could not thereafter invoke his Fifth Amendment right without having all the testimony stricken;

8

and (5) testifying might be detrimental. After the admonishment, Appellant freely and voluntarily waived his right to remain silent. At this point, defense counsel asked to speak with his client and apparently persuaded him not to testify.

Appellant contends that because admonishment is not required when a defendant is represented by counsel, the trial court violated his rights and committed reversible error. We disagree. The record is clear that after the admonishment, Appellant waived his right and still wished to testify. Appellant did not change his mind until after speaking with his attorney. *See Marin v. State*, 851 S.W.2d 275, 280 (Tex.Crim.App. 1993) ("Waivable rights, on the other hand, do not vanish so easily. Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record."); *Stringer v. State*, 241 S.W.3d 52, 56 (Tex.Crim.App. 2007). Appellant actually did so. Moreover, Appellant's right to be heard under the Due Process Clause of the Fourteenth Amendment and his right to make a personal defense under the Sixth Amendment were not violated, because nothing in the record supports the conclusion that the judge's admonishment actually led to Appellant's decision not to testify. We overrule Issue Two and affirm the judgment of the trial court.

ANN CRAWFORD McCLURE, Justice

April 30, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)