Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



DYLAN DAVIDSON,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00117-CR

Appeal from the

210th District Court

of El Paso County, Texas

(TC# 20030D02013)




O P I N I O N

           This is an appeal from a jury conviction for the offense of murder. The jury assessed
punishment at fifty-three years’ imprisonment in the Institutional Division of the Texas
Department of Criminal Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           At trial, the State utilized the testimony of Sandra Aguilar. She testified that on March
14, 2003, she met with the victim, Alejandro Enriquez, at a gas station on Paisiano Avenue
in El Paso, Texas at five o’clock in the early evening. On the way to her apartment, they
stopped at a store, and Enriquez bought an eighteen pack of beer. Enriquez had already been
drinking. After arriving at Aguilar’s apartment, Enriquez drank two beers. They then left
for a bar named Jesse’s Too.
           Upon arrival at the bar at 6 p.m., Enriquez proceeded to drink several beers. He paid
cash for the beers with twenty dollar bills. He kept his money in a wallet. The owner of the
bar testified that Enriquez had a lot of money with him. At about 9 p.m., Aguilar and
Enriquez left to pick up her daughter at her work. They then returned to the bar. They
continued to drink until the bar owner, Eva Gonzalez, refused to serve Enriquez any more
beers. He then tried to get other bar patrons to buy him drinks. He began flirting with the
bar owner, and Aguilar danced with other men at the bar. Enriquez got upset at this and left
the bar. While he was upset, he did not become aggressive with anyone at the bar.
           Earlier that same day, a woman with the nickname of Panda Bear, an individual
named Henry Carlisle, and Appellant were panhandling at the Running Bear store on
Yarbrough Street in El Paso, Texas. Gerald Dilsaver arrived at the store at about 5 p.m. and
he ran into them. He had met Panda Bear before, but he did not know the other two. He was
invited for a drink behind the store, and they drank while taking turns showing a sign asking
for money. Dilsaver saw that Appellant had a knife in his possession. Later, after Dilsaver
left, the three purchased several items from the store and they walked to a campsite near
some railroad tracks under a bridge. They had with them a case of beer and some food items. 
It was their intent to catch a freight train later that evening.
           Carlisle testified for the defense at the guilt-innocence stage of trial. According to his
testimony, the group settled in at the campsite by obtaining an old loveseat and a chair. They
made a fire and continued to drink. Alejandro Enriquez then charged into the campsite. 
Appellant and Carlisle jumped up as Enriquez had not announced his arrival. Appellant
thought Enriquez was an individual named Youngster who had stabbed Panda Bear on a prior
occasion. Appellant attacked with his knife. Carlisle pulled Appellant back, took the knife
away, and threw the knife over by the loveseat. When it became clear that Enriquez was not
the individual who had previously stabbed Panda Bear, Appellant apologized to Enriquez,
and he was invited to drink.
           When the fire started to go down, Carlisle and Appellant went to collect some wood. 
He heard some noise and he saw Enriquez on top of Appellant. He separated them, but
Enriquez started toward Appellant and Carlisle hit him twice and told him to stop fighting
or someone might call the police. Enriquez agreed to stop fighting. When they got back to
the campsite, Carlisle testified that Enriquez again attacked Appellant, but as Carlisle went
to break up the fight, his glasses were knocked off and he stopped trying to intercede. He
stated that Appellant was fighting for his life and he stabbed Enriquez ten to twenty times. 
Enriquez did not have a weapon. As Appellant stabbed Enriquez, he was “hollering” and
praying in Spanish. After the fight, Carlisle saw that Enriquez was not moving. He told
Appellant that “he was in deep shit.” Carlisle took off his bloodied jacket and hat and threw
them into the fire. The three left the scene and went to the Running Bear store.
           Gerald Dilsaver had camped near the Running Bear store. He heard Panda Bear
yelling and cursing about some bloody clothes. The three stood near the foot of his sleeping
bag, and Panda Bear and Carlisle explained what happened. They left and Dilsaver noticed
that Appellant’s right eye was badly swollen and he had blood on his pants, boots, and hands. 
Appellant then stated to Dilsaver, “I just killed a Mexican.” When Dilsaver asked if the
individual was dead, Appellant related, “Yes. And then I cut his throat.” Appellant then
acted out how he killed the victim and he stated to Dilsaver that he, “just couldn’t stop.” The
three then washed the blood off their hands and shoes, and all the bloody clothes were placed
in a plastic bag for burning.
           Floyd Quillen testified that the three arrived at his trailer sometime around 7 a.m. All
three wanted to take a shower, but Appellant was the only one who actually showered. 
Quillen observed that Appellant was wearing a bloody shirt, he had a cut above his eye,
missing skin from his knuckles, and a swollen right eye. Appellant related to Quillen that
he and Carlisle had gotten into a fight. Panda Bear stated that she wanted some more beer
and she pulled out $60 to $65 from her pocket to purchase the beer. The three left Quillen’s
trailer to catch a train.
           Officer Jesus Payan Jr., a police officer with the El Paso Police Department, testified
that he was dispatched to a crime scene located at a campsite at Yarbrough and San Jose
Streets at approximately 12:30 on March 15, 2003. He observed that the victim’s body was
covered with blood and dirt. Some one dollar bills were found near the victim. No wallet
was found. He returned to the crime scene the next day and he found a knife that had been
burned.
           Dr. Corinne Stern testified that Enriquez had fifty-two stab wounds to his body. Most
were located near his neck and torso. She testified that he had bruises and abrasions about
his face. He had a cutting wound to his anterior neck. He had many other cuts and abrasions
about most of his body. Dr. Stern testified that there were no defensive wounds other than
some possible defensive bruising type wounds to the back of his right hand which would not
indicate defensive action to the inflicted stab wounds. The cause of death was the stab
wounds.
           The blood screening indicated that Enriquez’s blood alcohol level was 0.34 percent
at the time of the autopsy, but it was probably higher two hours prior to his death. Dr. Stern
testified that an individual intoxicated at such a level would have had serious vision
problems, restricted mobility, slurred speech, and his ability to function would have been
seriously impaired. Dr. Stern further testified that it would have been extremely difficult for
him to defend himself.
II. DISCUSSION
           In Issue No. One, Appellant maintains that the evidence was legally and factually
insufficient to support the jury’s rejection of Appellant’s self-defense claim. In reviewing
the legal sufficiency of the evidence, we are constrained to view the evidence in the light
most favorable to the judgment to determine whether any rational trier of fact could find the
essential elements of the offense, as alleged in the application paragraph of the charge to the
jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989); Humason
v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). More particularly, sufficiency of the
evidence should be measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 239-40 (Tex. Crim. App.
1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           In conducting a factual sufficiency review, we view the evidence in a neutral light to
determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. 
We set aside the fact finder’s verdict only if (1) the evidence supporting the verdict, when
considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt
standard could not have been met. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim.
App. 2004). However, our factual sufficiency review must be appropriately deferential so
as to avoid substituting our judgment for that of the fact finder. Clewis v. State, 922 S.W.2d
126, 133 (Tex. Crim. App. 1996). Accordingly, we are authorized to set aside the jury’s
finding of fact only in instances where it is manifestly unjust, shocks the conscience, or
clearly demonstrates bias. Id. at 135. If the evidence is factually insufficient, we remand to
the trial court for a new trial. Id. at 133-35.
           When an Appellant challenges the legal sufficiency of the evidence supporting a fact
finder’s rejection of a defense, we look not to whether the State presented evidence that
refuted Appellant’s self-defense testimony, but rather we determine whether after viewing
all the evidence in the light most favorable to the prosecution, any rational trier of fact would
have found the essential elements of murder beyond a reasonable doubt and also would have
found against Appellant on the self-defense issue beyond a reasonable doubt. Saxton v.
State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). When an Appellant challenges the
factual sufficiency of the rejection of a defense, we review all of the evidence in a neutral
light and ask whether the State’s evidence taken alone is too weak to support the finding of
guilt beyond a reasonable doubt and weighing all of the evidence, the evidence supporting
the defense is strong enough that the fact finder’s rejection of the defense does not meet the
beyond-a-reasonable-doubt standard. See Zuniga, 144 S.W.3d at 484-85; Zuliani v. State,
97 S.W.3d 589, 595 (Tex. Crim. App. 2003).
           A person is justified in using force against another when and to the degree he
reasonably believes the force is immediately necessary to protect himself against the other’s
use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31 (Vernon 2003). A
person is justified in using deadly force against another (1) if he would be justified in using
force according to section 9.31 of the Texas Penal Code; (2) if a reasonable person in the
actor’s shoes would not have retreated; and (3) when and to the degree he reasonably
believes the deadly force is immediately necessary to protect himself against the other’s use
or attempted use of unlawful deadly force. Tex. Penal Code Ann. § 9.32 (Vernon 2003). 
Deadly force is defined as “force that is intended or known by the actor to cause, or in the
manner of its use or intended use is capable of causing, death or serious bodily injury.” Tex.
Penal Code Ann. § 9.01 (Vernon 2003).
           Regarding the legal sufficiency of the evidence, we note that the medical examiner
testified that the deceased was so intoxicated, it would have been difficult for him to defend
himself. There were no appreciable defensive wounds. Further, fifty-two separate stab
wounds were inflicted and there was no indication the deceased had a deadly weapon. The
deceased was hollering and praying during the attack. Appellant stated to a witness that he
could not stop stabbing the deceased, and he had slit his throat. The autopsy indicated that
Appellant’s throat had been slit. The jury could have justifiably chosen to disbelieve
Carlisle’s testimony that Appellant was “fighting for his life.” We find that the evidence is
legally sufficient to support the conviction.
           Regarding the factual sufficiency of the evidence, Carlisle’s testimony that the
deceased was the aggressor could have justifiably been disbelieved by the jury. Initially,
Appellant drew his knife when Enriquez entered the campsite due to mistaken identity. 
While the evidence indicated that Appellant had a badly swollen eye, none of the physical
evidence indicates that Appellant could have justifiably resorted to deadly force in defending
himself. There is some evidence that robbery was a motive in the assault. Given these
factors and the discussion regarding the legal sufficiency, we find that the evidence is
factually sufficient to support the conviction. Issue No. One is overruled in its entirety.
           In Issue No. Two, Appellant asserts that the prosecution’s argument at the
guilt/innocence stage of trial exceeded the bounds of proper argument because certain
references were not reasonable, fair, legitimate, nor was it offered in good faith. Appellant
failed to lodge any such objection during the State’s argument. A defendant’s failure to
object to allegedly improper jury argument waives any complaint on appeal. Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). As Appellant has failed to preserve this
issue on appeal, Issue No. Two is overruled.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice

April 20, 2006

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)