Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



FRANCES WATSON,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-05-00148-CR


Appeal from the


120th District Court


of El Paso County, Texas


(TC# 20040D03564)


O P I N I O N



 This is an appeal from a conviction for the offense of driving while intoxicated, third or
more. The court assessed punishment at five years' community supervision. We affirm.

I. SUMMARY OF THE EVIDENCE


 Officer Eric Watts of the El Paso Police Department testified that, around midnight on June
11, 2004, he was dispatched to investigate an accident at the intersection of Vista Del Sol and
George Dieter streets in El Paso, Texas. Upon arrival, he found two disabled vehicles in the
intersection. Officer Watts saw Appellant standing next to her vehicle, while Nancy Lopez and her
son, Javier Lopez, were sitting on a curb. The officer exited his patrol car and approached Appellant. 
She stated that she had made a left turn on a green light, and the other vehicle was traveling too fast
and struck her. The officer observed that Appellant was nervous, and she was swaying on her feet. 
There was a strong odor of alcohol emanating from her breath and person. Officer Watts testified
that Appellant's speech was slurred, her eyes were bloodshot, and she was slow to respond to his
questioning. The officer stated that Appellant was chain smoking, and she continued to blow
cigarette smoke in his face notwithstanding his repeated requests for her to stop doing so. He
thought that Appellant was trying to keep him away from her in order to mask the smell of alcohol. 
 Initially, Appellant stated she did not want to be attended by EMS. Approximately ten
minutes later, however, Officer Watts assisted her to the curb, and Appellant said she might be
injured and wanted to be checked out by medical services. Appellant stated that she had a hard time
standing up without assistance, and she complained of back and neck injuries.

 Officer Watts also interviewed the occupants of the other vehicle, Nancy Lopez and her son,
who was a passenger in the vehicle. The officer interviewed them separately and their stories were
consistent. Neither appeared to be intoxicated. Nancy Lopez asked Officer Watts whether Appellant
was intoxicated, because she thought she had smelled alcohol coming from her. Officer Watts
responded only that the accident would be investigated further. The ambulance arrived and Nancy
Lopez was attended to.

 Officer Watts requested a DWI unit. Although he is qualified to administer field-sobriety
tests, he felt more comfortable calling in the DWI unit, in order to provide a safer situation and to
allow him to continue to investigate the accident. He believed Appellant was intoxicated.

 Officer Watts asked Appellant for her driver's license and proof of insurance. After giving
her license to him, Appellant stated that the proof of insurance was in the glove compartment of her
vehicle. The officer left Appellant at the curb for her safety and went to retrieve the proof of
insurance. He could not find the insurance certificate, but he did smell a strong odor of alcohol
emanating from the interior of Appellant's vehicle. On the floor of the vehicle, he found a plastic
cup which smelled of alcohol. As a result of viewing the damage to both vehicles and after hearing
both accounts of the accident, Officer Watts determined that Appellant was responsible for the
accident. He issued citations to the Appellant for causing the accident and for failing to provide
proof of insurance. At the time he issued the citations, he did not anticipate arresting Appellant for
DWI.

 When the DWI unit arrived, Officer Watts informed Officer Isidro Apodaca about the results
of his investigation and about his conclusion that Appellant was intoxicated. Both Lopezes were
taken to the hospital. Officer Apodaca spoke to Appellant, and he escorted her to an area where the
ground was level, in order to conduct field-sobriety tests. He observed that Appellant was emitting
an odor of alcohol and had bloodshot eyes and slurred speech. She also had difficulty maintaining
her balance. Appellant told Officer Apodaca that she had no physical ailments that would hinder her
performance on the tests. She was not specifically asked whether she had hit her head in the accident
or whether she was shaken up, but, at some point, she did state to Officer Apodaca that she was in
pain. He could not recall when Appellant told him about the pain, but he surmised it must have
occurred after the tests, because, if it were otherwise, he would have terminated the tests.

 Officer Apodaca conducted a walk-and-turn test. Appellant could not maintain her balance,
she stepped off the line, and she did not walk the appropriate number of steps. She started before
the officer's instructions were completed. During the one-leg-stand test, Officer Apodaca noticed
that Appellant swayed, she used her arms for balance, and she put her foot down before the requisite
thirty seconds were completed. Based upon all the circumstances he observed, the officer
determined that, while Appellant was only "slightly intoxicated," she had lost the normal use of her
mental and physical faculties. Officer Apodaca then placed her under arrest for driving while
intoxicated. At that point, Officer Watts rescinded the citation for causing an accident.

 On the way to the police station, Appellant stated to Officer Apodaca that Nancy Lopez had
hit her vehicle and that her prior arrests for DWI were being held against her. Upon arrival at the
station, she refused to provide a breath test or to perform any additional field-sobriety tests. 
Appellant requested a lawyer, and the DWI interview was terminated.

 Nancy Lopez testified that she was proceeding through the intersection on a green light when 
Appellant made a left turn from the opposite direction and struck her vehicle. Javier Lopez testified
in the same vein. Nancy Lopez had limited contact with Appellant at the scene, but Javier Lopez
stated that Appellant appeared to be disoriented and she smelled of alcohol. She was not belligerent,
and she had no trouble walking. Nancy Lopez inquired of Officer Watts whether Appellant was
going to be tested to see whether she was intoxicated. Javier Lopez thought that Appellant was
intoxicated, because she tried to start her vehicle, notwithstanding the fact that liquids were leaking
from her vehicle, and she lit a cigarette in what he considered to be dangerous circumstances.

 During the defense portion of the case, Carol Hughey, a good friend of Appellant, testified
that she arrived at Appellant's house at about 8 p.m. on the night of the accident. Appellant did not
appear to be intoxicated, and Hughey could not smell any alcohol, although she did not know
whether Appellant had been drinking prior to her arrival. They went to a friend's house and then
returned to Hughey's house, where they visited and smoked cigarettes until around midnight. 
Neither drank any alcoholic beverages during the course of the evening. Hughey was unaware
whether Appellant took anything to drink from her house when she left; however, the only alcoholic
drinks were in her garage. Five minutes after Appellant left, Hughey got a call from her. Appellant
stated she had been in an accident. Hughey left for the accident scene. Both on the phone and at the
accident scene, Appellant was babbling and crying; she appeared distraught and upset.

 Hughey stated that one of the officers told Appellant that she was to receive a ticket. When
Appellant began to argue with him, Hughey told her to take the ticket and be quiet. When the
ambulance arrived, she overheard Appellant tell the medical personnel that she was fine. Hughey
testified that she was able to observe Appellant's taking the field-sobriety tests and that she thought
that Appellant had done well on them. At the completion of the tests, Appellant was placed in the
officer's patrol car. Upon inquiry, the officer stated that Appellant was not under arrest. Hughey
then advised Appellant not to give a breath specimen because, in Hughey's opinion, the test was
subjective and inaccurate. Hughey then left and took some of Appellant's possessions, including
the two traffic citations. Later in the evening, Officer Watts called her and asked her to return the
citations to the police station.

 Hughey testified that Appellant wore newly obtained dentures, to which she was
unaccustomed. Hughey attributed Appellant's difficulty in speaking at the accident scene to
problems with the dentures. She testified that Appellant was not intoxicated at the scene of the
accident. Also, due to Appellant's normal high-strung and rambling behavior, an observer who did
not know Appellant might think she was intoxicated.

 Appellant testified in her own defense. She stated that she had not consumed alcohol on the
night of the accident. She did take a glass of grapefruit juice with her when she left Hughey's house. 
She stated that she turned on the protected green arrow in order to make a left-hand turn through the
intersection. After she entered the intersection, the arrow light turned yellow. Appellant testified
that she had the right-of-way. After inquiring after the well-being of the occupants of the other
vehicle, she called Hughey. Appellant testified that she suffered injuries from the accident. She hit
her head and broke a hair clip. She stated that she was hysterical, but she never blew smoke in
Officer Watts's face. Appellant related that her dentures became unglued and her speech was
affected. Appellant stated that, earlier in the day, she been cleaning out a shed, and she had handled
denatured alcohol, paint, gasoline, paint remover, and materials from fire extinguishers. 
Furthermore, during the accident, a carton of eggs broke inside her vehicle and a cup of grapefruit
and a coke spilled in the vehicle. Her dentures became unglued which caused a horrid smell. She
testified that those smells, together with the fact that she had prior DWI arrests, caused the officers
to think she smelled of alcohol.

 Appellant stated that she readily agreed to take the field-sobriety tests, but she told the officer
that she was having difficulty with her left knee and was having other physical problems. She stated
she was never asked whether she had physical problems. She thought she performed the walk-and-turn test well, and she thought that she had almost completed the one-leg-stand test, but she put her
foot down before completion because her leg was sore. Appellant testified that the officer told her
she did fine on the tests, but that he wanted a breath specimen, and she was handcuffed and placed
in the police car. At the station, she told the officer that her pain was getting greater. She refused
any further testing and requested a lawyer. She was agitated due to her medical condition. Six hours
later, she was transported to the hospital.

II. DISCUSSION


 In Issue Nos. One through Three, Appellant asserts that the trial court erred in allowing the
prosecutor to cross-examine Appellant about her prior DWI convictions, in alleged violation of her
State and Federal due process rights. During the guilt/innocence stage of trial, the following
exchange occurred:

 STATE: Ms. Watson, I'm going to hand you what's been marked State's
Exhibit Number 4. It is a stipulation that has been entered into by
yourself, together with your attorney, Ms. Stillinger, and myself. And
has been approved by the Judge. And in it, you stipulate, essentially,
that you have twice before been convicted of driving while
intoxicated. Specifically, in Cause Number 20000C14605, in the
case styled The State of Texas versus Frances Watson, in County
Court at Law Number 1, of El Paso County, Texas. You were
convicted of driving while intoxicated. And on April 30th, 2001, in
Cause Number 990C09666, styled The State of Texas versus Frances
Regina Watson, in County Court at Law Number 1, you were
convicted of driving while intoxicated. Right?


 APPELLANT: Yes, sir.


 STATE: And that stipulation further sets out that you committed one of the
offenses, I believe, in 1999? And the other one in 2000? But you
pled to both of them at the same time, right?


 APPELLANT: Yes, sir.


 STATE: All right. So you--you were arrested for driving while intoxicated.


 DEFENSE: Your Honor, I'm--I'm going to object to this line of questioning. We
have a stipulation, and--and . . .any other cross-examination on this
point is--


 STATE: Judge, she has--she has put her client on the stand. And I'm entitled
to cross-examine her, to prove up my case, in regard to those two--


 COURT: Go ahead.


 STATE: --two matters. And so you--you had one in '99, and you were out on
bond on that one. And while you were out on bond, you committed
another one. And then somewhere down the road you pled guilty to
both of them, right?


 APPELLANT: I pled guilty to both of them, yes.

 

 Appellant stipulated to her two prior DWI convictions, and the prosecutor read the stipulation
into evidence.

 The admission of evidence is a matter within the discretion of the trial court. See
Montgomery v. State, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). Appellate review is
conducted under an abuse-of-discretion standard. See id. If the trial court's ruling is within the
"zone of reasonable disagreement," no abuse of discretion occurs, and the trial court's ruling will
be upheld. Rachal v. State, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996).

 Appellant maintains that the prosecutor's cross-examination of her concerning her prior
convictions violated her due process rights, in that the stipulation settled the matter of the two prior
convictions, thereby precluding any further mention of them. However, in a case of this nature, the
two prior DWI convictions are jurisdictional elements which must be proven by the State. Hollen
v. State, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003). The two convictions are the legitimate
subject of voir dire, opening statements, and closing arguments. Id. The stipulation may be admitted
into evidence. Id. Furthermore, a defendant may be cross-examined concerning the convictions
contained in a stipulation. See Ford v. State, 112 S.W.3d 788, 790-92 (Tex. App.--Houston [14th
Dist.] 2003, no pet.). In Rodriguez v. State, No. 08-03-00237-CR, 2004 WL 1903407, at *4 (Tex.
App.--El Paso Aug. 26, 2004, no pet.) (mem. op.) (not designated for publication), we found that no
error occurred when the prosecutor mentioned the prior DWI convictions during the direct
examination of one of the officers, notwithstanding the fact that a stipulation had been entered into. 
Also, the matter concerning Appellant's being on bond when the second offense occurred was
readily discernable from the stipulation, which was properly in evidence. Accordingly, we find that
the trial court did not abuse its discretion in allowing the cross-examination in question. Issue Nos.
One through Three are overruled.

 In Issue Nos. Four through Six, Appellant maintains that the evidence was legally and
factually insufficient to support her conviction and that the jury's finding of guilt violated her due
process rights. In reviewing the legal sufficiency of the evidence, we are constrained to view the
evidence in the light most favorable to the judgment to determine whether any rational trier of fact
could find the essential elements of the offense, as alleged in the application paragraph of the charge
to the jury, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Butler v. State,
769 S.W.2d 234, 239 (Tex. Crim. App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim.
App. 1987). More particularly, sufficiency of the evidence should be measured by the elements of
the offense, as defined by the hypothetically-correct jury charge for the case. Malik v. State, 953
S.W.2d 234, 239-40 (Tex. Crim. App. 1997).

 Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. 
Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951 (1990); Dwyer
v. State, 836 S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet. ref'd). We do not resolve any conflict
in fact, weigh any evidence, or evaluate the credibility of any witnesses, so the fact-finding results
of a criminal jury trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex.
App.--El Paso 1995, pet. ref'd); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d 757, 759
(Tex. App.--El Paso 1992, pet. ref'd); Bennett v. State, 831 S.W.2d 20, 22 (Tex. App.--El Paso 1992,
no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the
trier of fact are rational, by viewing all the evidence admitted at trial in the light most favorable to
the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the
evidence in favor of the verdict. Matson, 819 S.W.2d at 843 (quoting Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988)). The trier of fact, not the appellate court, is free to accept or reject
all or any portion of any witness's testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El
Paso 1995, pet. ref'd).

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is
factually insufficient, if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or if the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder's determination, or that the proof of guilt, although adequate if taken
alone, is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder's determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the
testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Consequently, we
may find the evidence factually insufficient only where necessary to prevent a manifest injustice
from occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1977).

 Appellant attacks the sufficiency of the evidence solely on the issue of whether she was
intoxicated. She maintains that the facts that Officer Watts did not conduct a field-sobriety test and
that he did not intend to arrest her, since he issued two citations, (1) demonstrates that she was not
intoxicated. However, Watts testified regarding Appellant's demeanor and the smell of alcohol on
her person and in her vehicle. He further stated that he called the DWI unit to make the
determination whether she was intoxicated. Officer Watts stated that he issued the tickets for
reasons of convenience, in that, if Officer Apodaca were to conclude that Appellant was not
intoxicated and everyone left the scene before he could issue the tickets, he would have had to track
Appellant down to get her to sign the citations. Furthermore, while Officer Watts testified that he
did not intend to arrest Appellant when he issued the tickets, it is clear that he had already called for
the DWI unit to investigate the matter.

 Appellant asserts that Officer Apodaca's testimony regarding the field-sobriety tests should
be afforded little weight, because Appellant was shaken up during the accident and she had trouble
walking, thereby diminishing the accuracy of the field-sobriety tests. Further, he testified that
Appellant was only "slightly intoxicated." However, he testified that, if he had felt or learned that
Appellant was too injured to take the tests, he would not have administered them. Furthermore, he
observed other indicators of intoxication, apart from the results of the field-sobriety tests, which
indicated that she had lost the normal use of her mental and physical faculties. (2)

 The defensive portion of the case provided alternate reasons to indicate why Appellant
smelled of alcohol and why she failed to perform the field-sobriety tests successfully. Furthermore,
there was testimony that Appellant had not been drinking prior to the accident. However, the fact
that an alternative explanation is offered that is different from the State's evidence does not
automatically make the evidence insufficient. Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim.
App. 2001). The jury can reject an alternative explanation of facts. Id. In the instant case, we find
that the evidence was legally and factually sufficient to support the conviction. Issue Nos. Four
through Six are overruled.

 We affirm the judgment of the trial court.


 KENNETH R. CARR, Justice


March 29, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. It is the policy of the El Paso Police Department not to issue a traffic citation, if the accused is arrested for
DWI.
2. In addition to the officers' testimony, Javier Lopez testified that Appellant smelled of alcohol and that she
acted in a manner not conducive to her own safety.