COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROSE MARIE RAMOS, | § | No. 08-07-00117-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 409th District Court |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC# 20040D03641) |
| | § | |

**O P I N I O N**

This is an appeal from a jury conviction for the offense of intoxication manslaughter. The jury assessed punishment at three years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm the judgment of the trial court.

**I. SUMMARY OF THE EVIDENCE**

At the start of trial, a stipulation was admitted into evidence, and was published to the jury.[1] The stipulation admitted that Appellant was intoxicated and that she was driving the vehicle. Then, Patrol Officer Christopher Grijalva of the El Paso Police Department testified that he and his partner

---

[1] The stipulation read:

Comes now the State of Texas represented by Assistant District Attorney Penny J. Hamilton, the Defendant Rose Ramos, in person, and represented by her attorney Mr. Gary Hill, who agree and stipulate that on April 18th, 2004, at the time of the single vehicle collision of the vehicle the defendant was operating, the defendant Rose Ramos was intoxicated by not having the normal use of mental and physical faculties by reason of the introduction of alcohol into the body, and by having a blood alcohol concentration of .08 or more.

Furthermore, Rose Ramos' blood alcohol concentration was 0.20 grams of alcohol per 100ml in a specimen that was obtained at 0350 hours on April the 18th, 2004.

responded to an accident on the Cesar Chavez Highway on April 18, 2004, at approximately 2 a.m. The passenger door was open, and the female victim was on the ground, motionless. Her head was severely twisted, and it was apparent that she was dead. Appellant was sitting in the front passenger seat. She had her arms around the deceased and was calling for help.

The medical units arrived, and, while standing at the back of the vehicle, Officer Grijalva asked Appellant whether she was all right. Appellant responded by stating that she was the one who had been driving the vehicle. She stated that she had volunteered to drive. Officer Grijalva testified that the response made sense, because the passenger-side seat belt was still around the deceased's neck. He then asked Appellant whether anyone else was in the vehicle, and she responded negatively. She also stated that the vehicle belonged to the decedent. Appellant again told Grijalva that she had been driving the vehicle, and she then added that they had been at the "OP" and then had gone to Club 101, two well-known El Paso bars. They had both been drinking and had consumed six drinks.

Appellant was somewhat argumentative with the medics. She was refusing medical treatment, and she demanded that their attention be directed solely at her friend. Appellant was then transported to the hospital.

Paramedic Andres Gutierrez was dispatched to the accident. When he arrived, the decedent was already in another ambulance. Appellant was leaning against the vehicle. When Gutierrez asked her questions regarding her physical condition, in order to make an assessment, Appellant complained of neck and back pain. Gutierrez observed some bruising on the left, lower quadrant of her abdominal area, and he testified that such injuries usually occur due either to seat belt restraint or striking the steering wheel. No bruising was noted on Appellant's chest area. Gutierrez noted a very strong odor of alcohol coming from her breath. When asked about her ingestion of alcohol,

Appellant replied that she had had "five drinks and a beer."

Gutierrez testified that Appellant was alert the entire time he spoke to her, and she was able to answer all of his questions concerning her medical history, notwithstanding her slurred speech. She related that she was wearing a lap/shoulder seat-belt combination, and she had been the passenger in the vehicle. Based on his experience, and considering the location of the damage to the vehicle, Gutierrez testified that, if Appellant had been the passenger, her injuries would have been much more severe on her right side.

Police Officer Rodney Liston testified that he was assigned to the Special Traffic Investigations Unit. The court qualified him as an expert in accident reconstruction. Officer Liston testified that, when he arrived at the scene of the accident, he observed that the vehicle had sustained extensive damage on the passenger's side. Based on the evidence at the scene, he concluded that the driver had lost control of the car, and it had struck a guardrail. Officer Liston testified that the driver had veered off the right side of the road and then over-steered to the left and lost control of the vehicle. He testified that, in his opinion, the curve in the road could be negotiated successfully at ninety-two miles per hour, if the driver was not impaired by intoxication. He estimated that the car had been moving at a speed of seventy-four miles per hour in a forty-five miles-per-hour stretch of road.

Officer Liston determined that both shoulder belts had worked correctly, but that only the driver's side lap belt had worked. When he tested the passenger's lap belt, it would not latch, although he could not determine whether the defect had existed prior to the accident.

Dr. Juan Contin, a Deputy Medical Examiner for El Paso County, testified that he conducted an autopsy on the decedent later that day. There were two lacerations on the side and back of the right side of the skull. The deceased had a deep abrasion on the front and left side of her neck. She

had another abrasion that extended from the other abrasion to the left breast, creating a "Y" along her shoulders and forearms. While these abrasions and bruises were consistent with seat-belt injuries, it was probable that the decedent had also impacted something inside the car.

A dislocation of the decedent's neck was the cause of death, as the connection of the joint between the skull and the spine was completely severed. The fatal injury was due to blunt force trauma. Dr. Contin testified that the decedent had been a constrained passenger in the vehicle, in that some of her injuries were caused by a seat belt, and that those injuries which ran from her neck and went from the right to the left breast were consistent with her having been a passenger. However, he also testified that one of her bruises on the left front part of her chest was consistent with her having hit the steering wheel.

Appellant testified in her own defense. She was asked on direct examination whether she had ever been convicted of a felony, and she stated that she had not. Appellant's trial counsel then asked her whether she had ever received deferred-adjudication probation, and she acknowledged that she had served a deferred probationary term, which was subsequently dismissed. On cross-examination, Appellant stated that she had received the deferred adjudication in a case for "engaging in organized criminal activity theft."

Appellant testified that, on the evening of April 17, the victim, Susana Rodriguez, had come for her and they went to the "OP," and then to Club 101. Appellant drove the vehicle from the "OP" to Club 101, because her friend did not know how to get to there. They ended up staying most of the evening at Club 101, and they both became very intoxicated. Appellant stated that her friend always drove them home when they went out. Appellant also stated that they always went in Rodriguez's car, because Appellant never took her own car on these outings.

Appellant testified that she did not remember leaving Club 101 and that she just remembered

bits and pieces of the latter part of the evening. Appellant asserted that she asked her friend whether she was capable of driving, and she stated that she was. After that, the only thing Appellant remembered was seeing a bright light and thinking that they were on the wrong side of the road. She also stated that she did not remember who was driving the vehicle. She did remember trying to push the hair out of the decedent's face and screaming for her to wake up.

Appellant related that she did not remember getting into the ambulance. At the hospital, the police asked her whether she had driven the vehicle, and she was asked to sign a paper which she could not read, because it was blurry. Appellant testified that she did not remember telling Officer Grijalva that she had been driving the vehicle.

On cross-examination, Appellant conceded that she was able to give the paramedic information regarding her medical history. She was released from the hospital the same day she was admitted. She was able to relate to the hospital personnel where and with whom she lived, her diet, and the fact that she smoked a pack of cigarettes a week. She also was able to tell the intake workers at the hospital about her drug allergies.

Appellant initially stated that she did not remember who drove the vehicle at the time of the accident and that it was possible that she was driving. However, on redirect examination, she stated that, in her heart, she knew she was not driving.

## II. DISCUSSION

In her first issue, Appellant contends that she received ineffective assistance of counsel, resulting in an unfair trial. Successful claims of ineffective assistance of counsel must first demonstrate that counsel was not functioning as counsel guaranteed by the Sixth Amendment in providing reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The second prong of this test requires a showing that counsel's errors were so

serious as to deprive Appellant of a fair trial, such that there arises a reasonable probability that, but for counsel's unprofessional errors, the results would have been different. Reasonable probability is a likelihood sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068. Texas adopted this test in *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987).

The constitutional right to counsel does not mean errorless representation. In order to meet the constitutional standard, counsel must provide reasonably effective assistance. *Id.* In reviewing these assertions, the totality of representation is examined, as opposed to focusing upon isolated acts or omissions. Ineffective assistance of counsel cannot be established by isolating or separating out one portion of the trial counsel's performance for examination. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In that regard, this Court, on review, will not engage in hindsighted comparisons of how other counsel -- in particular, appellate counsel -- might have tried the case. *See Wilkerson,* 726 S.W.2d at 548. A fair assessment of trial counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct from counsel's perspective at the time. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. An appellant must overcome the presumption that, under the circumstances at trial, the challenged action could be considered sound trial strategy. *Strickland,* 466 U.S. at 688-89, 104 S. Ct. at 2065; *Stafford*, 813 S.W.2d at 506. Consequently, allegations of ineffectiveness of counsel must be firmly founded by the record. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983); *Mercado v. State,* 615 S.W.2d 225, 228 (Tex. Crim. App. 1981). The burden is upon an appellant to establish ineffective assistance of counsel by a preponderance of the evidence. *Williams v. State*, 837 S.W.2d 759, 761

(Tex. App.--El Paso 1992, no pet.).

In most instances, the record on direct appeal is undeveloped and cannot adequately reflect any failings of trial counsel. *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). A defendant may rebut the presumption of effectiveness by providing a record from which the appellate court can ascertain that trial counsel's performance was not based on sound trial strategy. *Parmer v. State*, 38 S.W.3d 661, 666 (Tex. App.--Austin 2000, pet. ref'd). A defendant can provide that record by filing a motion for new trial and obtaining a hearing thereon, based on ineffective assistance of counsel. Any error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Id.* A record that does not include any discernible explanation of the motivation behind trial counsel's actions fails to establish whether his actions were of strategic design or were the result of negligent conduct. *Thompson*, 9 S.W.3d at 813-14.

In the present case, Appellant filed a motion for new trial, but she did not assert an ineffectiveness of counsel claim, and she did not obtain a hearing on her motion for new trial. Therefore, the record is devoid of any explanation for trial counsel's actions.

Appellant asserts that trial counsel was ineffective for allowing the jury to receive the stipulation that indicated that she was driving the vehicle, since her defensive posture at trial was that she was the passenger. The State postulates that the defensive posture of the case was actually geared toward obtaining probation at the punishment stage of trial and that trial counsel's actions should be viewed in that light. However, that would require us to speculate, and absent a record that affords us the ability to weigh the reasons for trial counsel's actions, we cannot determine whether there was a plausible basis for his actions. *See id.*

Appellant also contends that trial counsel provided ineffective assistance by having her admit to her deferred-adjudication probation at the guilt/innocence stage of trial. Under Rule 609 of the

Texas Rules of Evidence, a party may attack a witness's credibility with evidence that the witness has been convicted of a felony or crime involving moral turpitude. *See* TEX. R. EVID. 609(a). However, while not admissible to impeach credibility, evidence of a deferred adjudication may be admissible to show a witness's bias or interest in a particular case, including the bias or interest of a defendant who testifies. *Moreno v. State*, 22 S.W.3d 482, 487 (Tex. Crim. App. 1999); *see also Maxwell v. State*, 48 S.W.3d 196, 199 (Tex. Crim. App. 2001). The State contends that trial counsel's actions may have been in support of Appellant's application for probation, in which she swore that she had never been convicted of a felony, in preparation for her testimony at the guilt/innocence stage of trial. Again, without a record indicating the reasons for trial counsel's actions, we are left to speculate, and we are unable to determine whether Appellant has met her burden in demonstrating ineffectiveness of counsel. Issue No. One is overruled.

In Issue No. Two, Appellant asserts that the evidence is legally insufficient to support the conviction. Specifically, Appellant contends that there is a fatal variance between the allegation in the indictment that "the said Susana Rodriguez was a passenger in the said Defendant's vehicle" and the proof at trial, which was that the vehicle belonged to Rodriguez.[2]

---

[2] The indictment read, in relevant parts, that Appellant:

**PARAGRAPH A**
did then and there, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, to-wit: by not having the normal use of mental and physical faculties by reason of the introduction of alcohol into the body, and by reason of that intoxication caused **the death of SUSANA RODRIGUEZ by then and there driving said motor vehicle into and causing it to collide with a guardrail while the said SUSANA RODRIGUEZ was a passenger in the said Defendant's vehicle,**

**PARAGRAPH B**
did then and there, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, to wit: by having an alcohol concentration of .08 or more, and by reason of that intoxication caused **the death of SUSANA RODRIGUEZ by then and there driving said motor vehicle into and causing it to collide with a guardrail while the said SUSANA RODRIGUEZ was a passenger in the said Defendant's vehicle . . . .**

(Emphases in original).

In reviewing the legal sufficiency of the evidence, we are obligated to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). More particularly, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically-correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997).

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex. App.---El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, so the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650-52 (Tex. App.--El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex. App.--El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex. App.--El Paso 1992, no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the trier of fact are rational, by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State*, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref'd).

In *Malik*, 953 S.W.2d at 240, the Court held that the sufficiency of the evidence should be

measured by the elements of the offense as defined by the hypothetically-correct jury charge for the case. Thereafter, the Court broadened the ramifications of *Malik* by holding that, for the purposes of a sufficiency-of-the-evidence review, a hypothetically-correct charge need not incorporate allegations that give rise to immaterial variances. *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). In *Gollihar*, the Court stated:

> A variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Id.* at 257 (bracketed insertion in original) (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). An immaterial variance will be disregarded in a review of the sufficiency of the evidence. *Id.* at 258. In this case, the variance was not material, because the complained-of language was not an element of intoxication manslaughter. The elements of the crime are that a person (1) operates a motor vehicle in a public place; (2) is intoxicated; and, (3) by reason of that intoxication, causes the death of another by accident or mistake. TEX. PENAL CODE ANN. § 49.08(a). Thus, all that the indictment needed to allege to be legally sufficient in this case is that Appellant was operating a motor vehicle in a public place, while intoxicated, and caused the death of another by accident or mistake. The issue of who owned the car was unnecessary to prove the offense and was therefore surplusage. Issue No. Two is overruled.

In Issue No. Three, Appellant argues that the conviction violates due process, because the notice provided to her in the indictment erroneously informed her that she was driving her own car, when the proof at trial indicated that the vehicle belonged to the decedent. Appellant cites various authorities for the proposition that an accused is protected by the due process clause of the United

States Constitution from being convicted, except upon proof of the elements of the offense beyond a reasonable doubt. However, she does not show how due process protections apply to the facts of this case, aside from the conclusory statement that she was erroneously informed by the indictment that she was driving her own car. To present an issue for appellate review, "[t]he brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). Conclusory statements which cite no authority present nothing for appellate review. *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App.), *cert. denied*, 506 U.S. 997 (1992). Accordingly, we hold that Appellant has waived her complaint and overrule her third issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

KENNETH R. CARR, Justice

September 11, 2008

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)