COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| REYNALDO ADAMS, | § | No. 08-10-00235-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 120th District Court |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC#20100D01531) |

## O P I N I O N

Reynaldo Adams appeals his conviction by jury trial of possession of less than one gram of cocaine.   We affirm.

### BACKGROUND

Based on a tip from a confidential informant, that a tall, black male in his 20's, known as R.J., was selling crack cocaine from a residence, located at 10729 Opalstone, the Narcotics Division of the El Paso Police Department, engaged in surveillance of that residence from March 1, 2010 to March 18, 2010.   Narcotics Detective Jose L. Ratliff testified he observed people arriving either on foot or by car, and going to the house, knocking or otherwise entering, and leaving after only a short while.   Based on his training and experience, Ratliff believed the activity indicated street-level narcotics dealing within the residence.   During his surveillance of the Opalstone residence, Ratliff never observed Appellant enter or exit the home.   He also never observed any of the individuals, later expressly identified as residents, entering or exiting the home.   After corroborating the informant's tip, Ratliff obtained a "no knock" search warrant for the Opalstone residence.

On March 19, 2010, Ratliff and a team of officers forcibly entered the residence and encountered Appellant and three other individuals inside the home. Gil Kelner, the homeowner and Appellant's uncle, was found in the hallway. Appellant's five-year-old son was in the living room and Mr. Kelner's seventeen-year-old daughter was in the kitchen. Appellant was found exiting the southeast bedroom. Appellant's fiancée, Jessica Williams, later arrived at the residence while police were still present.

During his search of the southeast bedroom which Appellant was seen exiting, Ratliff observed money on the bed in plain view. Before searching the room further, Ratliff called for a canine unit. The canine alerted to the odor of narcotics at several areas, including the money on the bed, a safe located underneath a nightstand, a makeup bag next to the nightstand, and underneath the bed where a shoebox was located.

On the nightstand in the southeast bedroom, police found a Texas I.D. card in the name of Reynaldo Jesus Adams which showed that Appellant resided at the Opalstone house. In the bedroom, police found mail addressed to Appellant at the Opalstone address, as well as clothing belonging to both Appellant and his son, a photo of his son and a poem entitled "Walking In Daddy's Footsteps" taped to a *Scarface* poster[1] displayed on a wall. At trial, Ratliff testified that the southeast bedroom belonged to Appellant and his fiancée.

During the search of the southeast bedroom, the police unsuccessfully tried to open a digital safe located underneath the nightstand. Detective Juan C. Gardea asked Appellant if the safe belonged to him and Appellant said, "Yes." At Gardea's request, Appellant unlocked the safe. Inside the safe, police found bundles of money wrapped in rubber bands, a small bindle of

---

[1] A poster of Bob Marley was also displayed in the southeast bedroom. Ratliff testified that in in his experience it was common to find such posters when searching a house with a warrant to search for narcotics.

cocaine, jewelry, including a pendant of the letter "R," the title to Appellant's Cadillac[2] and Appellant's social security card, bank card, and temporary I.D. permit. Nothing identifying any of the other Opalstone residents was found inside the safe.

In the southeast bedroom, in plain view on top of the nightstand, police found a small bindle of cocaine on the floor next to the nightstand, a razor blade with white residue, and a smoking pipe with marijuana residue. A small bag of marijuana and a smoking pipe with marijuana residue were found inside of a makeup bag next to the nightstand, and an unwrapped rock substance which field tested positive for cocaine was found behind some tote bags up against a wall. Ratliff testified that based on his training and experience, razor blades are commonly used to cut crack cocaine. The three bindles recovered from the southeast bedroom, were later determined to be 0.52 grams of cocaine.

The only cocaine discovered in the residence during the search was located in the southeast bedroom. A total of $10,781 cash was located only in the southeast bedroom. Based on the evidence collected at the residence, Appellant was arrested for possession of a controlled substance.

Williams, Appellant's fiancée testified that Appellant did not live at the Opalstone residence and that she occupied the southeast bedroom. She stated that Appellant came over every other day, but never stayed over, and that his son stayed with her in the southeast bedroom on the weekends. Williams also testified that she purchased and owned the digital safe that was found in the bedroom. According to Williams, she, Appellant, Gil Kelner, and J.W. McKenzie, Mr. Kelner's son, knew the combination to the safe. Williams explained that she kept Appellant's

---

[2] The car title was not in Appellant's name, but Ratliff testified that Appellant told him that he purchased the car from the individual named on the title.

3

I.D. cards, bank card, and important documents at the Opalstone residence so that Appellant would not lose them, and that the money found in the safe belonged to both her and Appellant and constituted the funds they had been saving for their wedding. She also explained that the money found in the shoebox underneath the bed belonged to Appellant's niece.[3] On rebuttal, Detective Ratliff testified that when he questioned Williams on the day of the search about the money located in the southeast bedroom, Williams informed him that she had no knowledge of any money in that bedroom.

After Appellant entered a plea of not guilty, the jury found Appellant guilty of possession of less than one gram of cocaine and sentenced him to eighteen months confinement in the state jail. This appeal followed.

## DISCUSSION

## Sufficiency of the Evidence

In Issues One and Two, Appellant argues that the evidence is legally and factually insufficient to support his conviction. Specifically, Appellant argues that the evidence was legally and factually insufficient to support the jury's finding that he (1) had actual control, custody and management of the contraband; and (2) that he had the requisite knowledge of the existing contraband. We reject Appellant's factual insufficiency claims because Texas no longer recognizes factual-insufficiency claims. *Brooks v.* State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (stating that the legal sufficiency standard is the sole standard that a reviewing court should use to evaluate whether the evidence is sufficient to support each element of a criminal offense).

### *Standard of Review*

---

[3] On the defense's behalf, Appellant's niece, Tanika Tate, testified that she gave Williams $2,500 in cash to hold for her.

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we review all the evidence in the light most favorable to the verdict and determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Brooks*, 323 S.W.3d at 895; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The State does not have to disprove all reasonable alternative hypotheses that are inconsistent with the accused's guilt for the evidence to be legally sufficient. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991).

The jury is the sole judge of the weight and credibility of the witnesses. *Brooks*, 323 S.W.3d at 899. It is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is not our role to determine whether the evidence establishes guilt beyond a reasonable doubt. *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex. App. – El Paso 1992, pet. ref'd). It is our duty to determine if the necessary inferences are rational by viewing all the evidence in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 16-17.

### *Possession of a Controlled Substance*

A person commits an offense if he "knowingly or intentionally possesses a controlled substance listed in "Penalty Group 1," unless it was obtained under a valid prescription or practitioner's order. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2010). Cocaine is listed as a controlled substance under "Penalty Group 1." *Id*. § 481.102(3)(D). Possession is defined as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010).

"A person acts knowingly, or with knowledge, with respect to the nature of his conduct or

5

to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b) (West 2011). Proof of knowledge is an inference drawn by the jury from all circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978).

To support a conviction for possession of a controlled substance, the State must prove two elements beyond a reasonable doubt: (1) the accused exercised actual care, custody, control, and management over the contraband; (2) the accused knew the substance he possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988); *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex. App. – El Paso 1995, pet. ref'd).

Mere presence at a location where narcotics are found is alone insufficient to establish a finding of possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Possession of the contraband need not be exclusive. *Harrison v. State*, 555 S.W.2d 736, 737 (Tex. Crim. App. 1977). When the contraband is not in the exclusive possession of the accused then additional, independent facts and circumstances must affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406.

An "affirmative link" may be shown to exist by either direct or circumstantial evidence, and it must establish that the accused's association to the contraband was more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Several factors have been found to show an affirmative link between the accused and contraband. *See Cuong Quoc Ly v. State*, 273 S.W.3d 778, 781-82 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd). As applicable to the case

6

before us, these factors include whether (1) the accused was present when the search was conducted; (2) the contraband was in plain view; (3) the contraband was found in proximity and accessible to the accused; (4) the accused made incriminating statements when arrested; (5) other contraband or drug paraphernalia was present; (6) the accused owned or had the right to possess the place where the drugs were found; (7) the drugs were found in an enclosed place; and (8) the accused was found with a large amount of cash. *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App. – Houston [14th Dist.] 2005, no pet.). The actual number of factors present is not as important as the logical force they have in establishing the commission of the crime. *Id.*

### *Evidence of Possession*

Appellant argues that the State was required to exclude all alternative reasonable hypotheses that Appellant was entirely unaware of the presence of cocaine. However, in order for the evidence to be legally sufficient, the State does not need to disprove all reasonable alternative hypotheses that are inconsistent with the accused's guilt. *Wilson*, 7 S.W.3d at 141; *Geesa*, 820 S.W.2d at 161. Appellant also contends that the State failed to prove sufficient affirmative links to allow the jury to conclude beyond a reasonable doubt that Appellant had actual, control, custody and management of the contraband and that he knew the contraband existed. However, it is not the number of links that is dispositive, but rather the logical force of both the direct and circumstantial evidence. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

Several of the affirmative links exist in the present case. Here, the police received a confidential tip that a man called R.J. was selling narcotics from the Opalstone residence. The Appellant's first and middle name are composed of those same initials. When the police executed the search warrant, Appellant was seen exiting the southeast bedroom and was present when the police conducted the search. The police recovered three bindles of cocaine which were enclosed

7

in the southeast bedroom. The bindle found in plain view on the floor next to the nightstand and the bindle found enclosed in the safe were accessible to Appellant. Appellant told Detective Gardea that he owned the safe found in the southeast bedroom and he unlocked it for Gardea. Other narcotics and drug paraphernalia were found in the southeast bedroom including a razor blade with white residue and a smoking pipe with marijuana residue. Detective Ratliff testified that razor blades are commonly used to cut crack cocaine. The contraband located on the nightstand was visible and accessible by Appellant. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (the presence of drug paraphernalia in home with contraband supported conclusion that defendant knowingly possessed cocaine).

The police also found mail addressed to Appellant at the Opalstone address which included a notice of denial on Appellant's application for food stamps dated February 25, 2010, twenty-two days before the search was conducted. Clothing of both Appellant and his son were found in the bedroom. In addition, the only money located in the Opalstone residence was found in the southeast bedroom and it was a large amount of money ($10,781). The jury was entitled to believe this evidence and disbelieve defense testimony that Appellant did not live or stay at the Opalstone residence and that part of the money found in the bedroom had been saved by Appellant and Williams for their wedding while the other part belonged to Appellant's niece. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000) (the jury can accept or reject all or part of the evidence presented); *Hooper*, 214 S.W.3d at 13 (we defer to the jury's responsibility to resolve conflicts, weigh evidence, draw reasonable inferences from the evidence).

Based on the evidence a reasonable jury could infer that Appellant lived at the residence and that he had the right to possess the southeast bedroom where the cocaine was found. *Hooper*, 214 S.W.3d at 13. The jury could also have reasonably inferred that Appellant owned the cocaine

8

that was located in the safe. *Id.; see also Thomas v. State*, No. 05-00-01528-CR, 2002 WL 15872, at *1 (Tex. App. – Dallas Jan. 08, 2002, pet. ref'd) (rational jury could have found that defendant knowingly and intentionally possessed cocaine with intent to deliver where evidence showed the safe that contained cocaine was found in plain view, defendant had a key that opened safe, and defendant was the only person who came out of bedroom).

Viewing the evidence in the light most favorable to the verdict, we find that a rational jury could have found, beyond a reasonable doubt, that Appellant knowingly possessed less than a gram of cocaine. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895. Therefore, we hold that the evidence was legally sufficient to sustain Appellant's conviction for possession of a controlled substance in an amount less than a gram. Issues One and Two are overruled.

### *Admission of Evidence at Trial*

In the sections of his brief listing the issues presented on appeal and in the summary of the argument, Appellant includes a third issue which challenges the trial court's admission of testimony offered by the State to show that Appellant had knowledge of the existing contraband. However, Appellant's brief entirely fails to provide any argument or authority in support of this issue. Because Appellant has inadequately briefed the issue, nothing is presented for our review, and we find that the issue has been waived. TEX. R. APP. P. 38.1(i); *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App. – El Paso 2007, no pet.) (failure to adequately brief an issue results in waiver). Accordingly, Issue Three is overruled.

### CONCLUSION

We affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

July 25, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

(Do Not Publish)